WARREN CARPENTER *vs*. CITY OF ST. PAUL.

December 12, 1876.

Constitution—Assessments for Local Improvements.—The case of *Rogers* v. *City of St. Paul*, 22 Minn. 494, followed as to the extent of the legislative power of taxation, under § 1, art. 9, of the constitution, in matters of local improvement, and the delegation of such power to local tribunals.

**Same—Powers Delegated to Local Tribunal.**—It is competent for the legislature to authorize a city council, or other local tribunal, to determine what property is benefited by any proposed local improvement, and to assess the cost thereof upon such property according to the benefits conferred. The decision of a tribunal invested with such authority, that certain property is so benefited, cannot be impeached by parol evidence showing no benefit in fact.

**City of St. Paul—Reassessments.**—Section 60, title 1, *c.* 7, of the act of March 5, 1874, (Sp. Laws 1874, *c.* 1,) relates as well to cases of defective assessments originating prior to the passage of the statute as to those occurring thereafter.

**Same—Conclusive Effect of Proceedings to Condemn Land for Street.**—The conclusive effect of a final determination made in the matter of opening a public street, and condemning land therefor, by the proper authorities of the city of St. Paul, under its charter, cannot be questioned, in a collateral proceeding, for defects and irregularities not going to the jurisdiction.

**Same—Advertisement at least Ten Days.**—An advertisement for bids to be put in on June 23, 1873, which was published in the official paper of the city on the 12th, and continued in each successive daily issue of such paper until the 22d, inclusive, of the same month, was a full compliance with the charter provisions requiring it to be given and continued in such paper for at least ten days, though one of such intervening publications occurred on Sunday, and no paper was issued on the Monday following, as was the custom with such official paper.

*Certiorari* to review a judgment of the court of common pleas of Ramsey county, *Simons,* J., presiding, against certain real estate of plaintiff, for the amount charged against it in the reassessment for grading Ramsey street, in the city of St. Paul.

*James B. Beals,* for plaintiff.

*W. A. Gorman,* for defendant.

CORNELL, J.[1]   Whether, in exercising the power of taxation, under § 1, art. 9, of the constitution, it is competent for the legislature to confer upon the common council or board of public works of a city authority to decide upon the local character of any contemplated public improvement within said city, to fix the amount necessary to be raised by taxation for that purpose, to ascertain what property will be benefited by the improvement, to prescribe the tax

---

[1] Gilfillan, C. J., having been of counsel, did not sit in this case.

district within which the amount of the tax shall be raised,. and to apportion the same by an assessment upon the prop- erty therein embraced and benefited, as also to give a final and conclusive effect to such its decision, except in case of fraud or mistake, was fully considered, and affirmatively settled, in the case of *Rogers* v. *City of St. Paul*, 22 Minn.. 494. Instead of prescribing, in terms, the limits of the tax district for any such local improvement, the legislature may, in its discretion, authorize the assessment to be made on such property as shall appear to be benefited, and empower such subordinate tribunal to ascertain and report, as a matter of judgment, upon actual inspection, what property will be so benefited, in which case the property so desig- nated in the report is regarded as constituting the tax district prescribed by legislative authority. Cooley on Taxation, 451; *Matter of Ward*, 52 N. Y. 395; *Appeal of Powers*, 29 Mich. 504. These principles are decisive of the main question raised and discussed by the counsel for appellant in this case as to his right to show, by parol evi- dence, upon the application for judgment in the district court, that the property in question was not in fact benefited by the proposed improvement, as well as the constitutional validity of the statute in question. It follows that the proceedings upon the reassessment in this case must be sustained, unless there has been some material departure from the provisions of the statute under which the judgment was rendered.

It is claimed by the petitioner that section 60 of the act of March 5, 1874, compiling the several acts relating to the incorporation of the city of St. Paul, and amending the same, (Sp. Laws 1874, p. 73,) gives no authority for a reassessment in any case originating prior to the passage of such act. The language of the section is: "In all cases where application has been or shall be made for judgment, under sections thirty-six, thirty-seven, thirty-eight, and thirty-nine of this chapter," etc. This clearly recognizes.

the fact that in some cases application for judgment "has been" or may have been made, under the provisions of these sections, prior to the passage of the act; and, when we consider that the statute is but a codification of the then existing law relating to this subject, with such amendments as experience had suggested, and that these sections were substantially taken from the act of 1871, as amended by the acts of 1872 and 1873, relating to the same subject, there is no reasonable doubt that it was the intention of the legislature, by this section, not only to provide for future, but past, defective assessments.    It appears, from the admitted facts, that the application for judgment upon the original assessment was refused because of some defect in the final order of the common council ordering the improvement, and because the board of public works had never specially reported to the council whether, in their opinion, real estate to be assessed for said improvement could be found benefited to the extent of the damages, costs, and expenses necessary to be incurred in making it.   This, by the very terms of the section, authorized the council to direct a new assessment, in case it should appear to it that the said lots affected thereby had been, or would be, benefited by the improvement.    In the order made by the council for the reassessment, it is expressly recited that this fact had been made so to appear, and from the record before us it must be taken as true, as nothing appears therefrom to the contrary.    The order is, in all respects, regular.

The point was made, in opposition to the application for judgment, on the hearing in the court below, and overruled, that the street in question, concerning the grading of which the proceedings herein were being had, was not a legally established public highway, inasmuch as the land over which it ran—the fee of which was in the petitioner—had never been lawfully condemned and appropriated to the public use as such.    It was admitted that proceedings for its condemnation had theretofore been properly instituted, and that the same had been prosecuted to a final determination

under the charter, but it was objected that they "were irregular," because of certain specified irregularities and ·defects, and therefore invalid. The ground of the objection ·did not go to the jurisdiction of the tribunal charged with the proceedings, but to irregularities and defects occurring during their prosecution. Conceding their character to be such as would have affected the validity of the final adjudication, on objection properly taken in that proceeding, or ·on appeal, it is clear that they are not proper subjects of enquiry in this proceeding. It cannot be attacked collater- ·ally in this proceeding on any such ground.

Under a provision in the charter, it was made the duty ·of the city clerk "to advertise for proposals for doing the work," and "to continue such advertisement, for at least ten days, in the official paper of the city." The advertisement in this case, inviting the submission of proposals for .June 23, 1873, was first given by publication in the official paper of the city on the 12th, and continued in each succes- :sive daily issue of such paper until the 22d day, inclusive, of that month. This was a compliance with the statute, although, as is claimed, one of these intervening publica- ·tions occurred on Sunday, and no paper was issued the following Monday, as was the custom with such official daily paper. In the case of *Sewall* v. *City of St. Paul*, 20 Minn. 511, cited by counsel, the statute required the ·notice to be given "by six days' publication," and the court held it to mean six distinct publications, on as many ·different lawful days of publication. The statute in this case only required the advertisement to be given and con- ·tinued, in the official paper, for the space of ten days; and, if it was published in every legal daily issue of such paper ·during such period, it was sufficient.

The question raised by the sixth point of the petitioner ·does not appear to have been made in the court below, and is not properly before us for consideration.

Judgment affirmed.