## LITTLE ROCK v. KATZENSTEIN.

1. TAXATION: *For local improvements in cities: Constitutional provision.*
   Sec. 27, Art. 19, of the Constitution, which in effect provides that the Legislature may authorize "assessments on real property for local improvements in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property-holders owning property adjoining the locality to be affected * * * ;" applies to any property adjoining or near the improvement, which is physically affected, or the value of which is commercially affected, directly by the improvement to a degree in excess of the effect upon the property in the city generally.

2. SAME: *Same.*
   Under Mansfield's Digest, section 826, empowering the councils of cities of the first class to form and define the boundaries of districts for local improvements, the action of a city council in including property in an improvement district is, except when attacked for fraud or demonstrable mistake—conclusive of the fact that such property is "adjoining the locality to be affected" by the improvement, within the meaning of the Constitution. [Art. 19, sec. 27.]

APPEAL from *Pulaski* Chancery Court.

D. W. CARROLL, Chancellor.

*U. M. & G. B. Rose*, for appellant.

The constitutional provision is not intended to apply to owners of abutting lots only. *Const. Ark., Art. 19., sec. 27; Little Rock v. Board of Improvements, 42 Ark., 153.*

The obvious intention is to fix the liability on the property to be affected or benefited. *McDermott v. Matthis, 21 Ark., 60.*

A corner lot is an abutting lot on both streets and pays double taxes even under the abutting system; that is, a tax on each street. *Springfield v. Greene, 11 N. E. R., 262.*

It is certainly more just that the whole quarter of the block should be put on the same footing.

The rule contended for by us was applied in a converse case in *Shepherd v. Baltimore R. R. Co., 130 U. S., 432.*

The property is not to be considered according to artificial lines merely. *Wassell v. Tunnah, 25 Ark., 101.*

The organization of a district will only be interfered with where the discretion vested in the council has been grossly

Little Rock v. Katzenstein.

abused. *Davis v. Gaines, 48 Ark., 382; County Judge v. Shelby R. R. Co., 5 Bush., 228; Peay v. Little Rock, 32 Ark., 38; Nevins v. Roach, 5 S. W. R., 547: Goodrich v. Minout, 62 Ill., 123; State v. Dist. Com'n., 29 Minn., 65; Mitchener v. Philadelphia, 12 Atl. R., 174; Henderson v. Jersey City, 41 N. J. L., 490; Massing v. Ames, 37 Wis., 651; Stowbridge v. Portland, 8 Oreg., 67; State v. Newark, 12 Atl. R., 171; Kelly v. Pittsburgh, 104 U. S., 82.*

There was no repeal implied. Repeals are not favored and have no existence where both statutes can be made to stand. *State v. Watts, 23 Ark., 304.*

And where private rights have accrued the prior ordinance could not be repealed. *1 Dill. Mun. Corp., sec. 314; Endlich Stat., sec. 481.*

Probably the word "affected" was used instead of "benefited" as being of less ambiguous meaning. One whose property was injured might sign the petition, and he would be entitled to compensation from the district to the extent of his injury. *Hot Springs R. R. Co. v. Williamson, 45 Ark., 429; Packet Co. v. Sorrells, 50 id., 474; Rigney v. Chicago, 102 Ill., 79; 1 Hare Am. Const. Law, 418.*

The word has therefore a larger meaning.

The lots taxed need not all abut on the street. *41 N. J. L., 490; 37 Wisc., 651; 8 Oregon, 67.*

*W. S. McCain* for, appellee.

1. This tax is illegal, unless it can be upheld under *art. 19, sec. 27.* The clear meaning of the words "adjoining the locality to be affected," is "abutting the place" or street along which the walk is laid. Reviews the statutes of the different States and cites: *32 N. J. L., 490; 38 id., 169; 10 Ohio, 130; 10 Oh. St., 159; 32 Ark., 31; 49 id., 381; 52 N. Y., 395; Cooley Tax, 452, note (1); 69 Pa. St., 352; ib., 365; 55 Am. Dec., 266; 78 id., 359; 67 id., 289; 73 Pa. St., 404; 81 Ill., 49; 99 id., 137; 91 id., 596; 2 Oregon, 146; 30 N. W. R., 780; 40 Wis., 315; 44 Vt., 174; 27 Cal., 613; 31 Oh. St., 371; 37 N. J. Law,*

*415; 2 Mich., 560; 14 Wall., 676; Desty Tax, sec. 191; Cooley Tax, 425–6.*

2.  A fatal objection is that the commissioners allow lot owners, who already had sidewalks, credit for the reasonable value of their sidewalks. *49 Ark., 370.*

3.  The ordinance was repealed by ordinance No. 81, covering the same territory.

SANDELS, J.   Section 27 of article 19, of the Constitution of Arkansas, is as follows :

"Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements, in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected ;. but such assessments shall be *ad volorem* and uniform."

Section 826 Mansfield's Digest, laws of Arkansas, is as follows :   " Section 826.   When any ten resident owners of real property in any such city, or of any portion thereof, shall petition the city council to take steps toward the making of any such local improvement, it shall be the duty of the council to at once lay off the whole city, if the whole of the desired improvement be general and local in its nature to said city, or the portion thereof mentioned in the petition, if it be limited to a part of said city only, into one or more improvement districts, designating the boundaries of such district, so that it may be easily distinguished, and each district, if more than one, shall be designated by number and by the object of the proposed improvement."

Pursuant to the foregoing provisions, the City Council of the City of Little Rock, on the 10th day of May, 1887, by ordinance, created "Sidewalk Improvement District No. 2, of the City of Little Rock," for the purpose of building a sidewalk on Second street.   Its boundaries were defined, and it may be said, generally, embraced half of each block on either side of

Second street in said city, from Main street to the western boundary of the district. Block 82 of said city lies on the south side of Second street, and a diagram of the same with the numbers of its lots is here given:

| 7 | 6 |
|---|---|
| 8 | 5 |
| 9 | 4 |
| 10 | 3 |
| 11 | 2 |
| 12 | 1 |

Center Street.

Second Street.

The district for the improvement of Second street embraced lots 1, 2, 3, 10, 11, and 12. The council proceeded regularly, and in due course, the levy was made upon all the property included in the district, to pay the costs of said improvement; and within the period of limitation prescribed by law, i. e., within twenty days from the publication of the ordinance levying said tax, the appellee, Katzenstein, filed the bill herein, alleging that he was the owner of lot 3 in block 82, and praying that the defendants be enjoined from exacting or claiming any tax from him, under said ordinance. He insists that said lot 3 does not abut upon, and is not contiguous or adjoining Second street, that he owns no property between lot 3 and Second street, and that said lots are fifty feet wide. He does not claim that his property is not affected nor benefited by the improvements. The defendants demurred generally, their demurrer was overruled, and declining to plead further, the preliminary injunction granted by the Chancellor was made perpetual, and they appealed.

Two questions are presented for determination: First. What is, "property adjoining the locality to be affected?" Second. To what extent is the action of the city council in placing lands in an improvement district, conclusive of the fact

that it is "property adjoining the locality to be affected?" These two queries may be considered together. Appellee insists that all reference to "benefits" must be excluded from consideration, and that only property abutting upon the sidewalk or other improvement, or owned by one who also owns abutting property lots, can be subjected to the tax. The appellants insist that the word "affected" has a larger meaning than "benefited;" that property may be "affected" injuriously as well as beneficially, and that all property in the locality "affected" by the work should be included in the district and be required to bear its share of the burthen.

It has been so often said as to become axiomatic, that absolute equality in the distribution of benefits and burthens is unattainable, yet it is also everywhere held that the very existence, in justice and equity, of the power of taxation, rests upon the theory of corresponding benefits to the tax-payer. We cannot exclude from view the idea of *benefits*, when the propriety of a tax is under consideration. Nor is it practicable to determine whether property is, or is not, "adjoining the locality to be affected" by the accident of proprietorship. The property of A today becomes the property of B tomorrow; and it is inconceivable to us, that the invisible and intangible passage of title from one to another can work any physical or legal removal of real estate from the locality to be affected. The "improvement" contemplated need not always have a physical effect upon the land taxable for its construction. Indeed, in most cases its effect is only upon its commercial value; and the land affected in either way, so that the effect be traceable directly to the neighboring improvement, is the " property adjoining the locality to be affected," mentioned in the Constitution. Under some circumstances, the effects may be more extended and far-reaching than under others. There is a given amount of improvement which will affect all localities alike, and the Constitution wisely avoided the erection of an absolute limit up to or beyond which the benefits might go,

or below which they might fall. There is no procrustean measurement for the exersise of equitable discretion.

To the General Assembly, then, was delegated the task of providing agencies for the accomplishment of these improvements. The General Assembly, in the exercise of a well-recognized constitutional power, imposed the duty of forming improvement districts, and defining their boundaries, upon the various city councils. The city council is invested with discretion, in this behalf, necessary to a just performance of the duty, and when it has acted, the property included by it in any district is, *prima facie*, adjoining the locality to be affected. We conclude, therefore, in answer to the two queries originally propounded :

1. TAXA-
TION:
For local
improve-
ments.

First—That property adjoining the locality to be affected is any property adjoining or near the improvement which is physically affected, or the value of which is commercially affected, directly by the improvement, to a degree in excess of the effect upon the property in the city generally.

2. SAME.

Second—That the action of the city council, in including property in an improvement district, is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake.

Upon the various propositions above stated, we cite : *Little Rock v. Board of Improvement, 42 Ark, 153 ; McDermot v. Mathis, 21 Ark., 60 ; Wassell v. Tunnah, 25 Ark., 101 ; Davis v. Gaines, 48 Ark., 382 ; Peay v. Little Rock, 32 Ark., 38 ; Shepherd v. Balto. Ry., 130 U. S., 432 ; County v. Ry., 5 Bush., 228 ; Nevins v. Roach, 5 S. W. Rep., 547 ; Goodrich v. Minonk, 52 Ill., 123 ; Mitchiner v. Philad., 12 Atlantic R., 174 ; Mossing v. Ames, 37 Wis., 651 ; Stowbridge v. Portland, 8 Oregon, 67 ; State v. Commrs., 29 Minn., 65 ; Rogers v. Paul, 22 Minn., 494 ; Carpenter v. same, 23 Minn., 232 ; State v. same, 27 Minn., 442.*

Reverse, with direction to sustain the demurrer to the complaint.

COCKRILL, C. J., did not participate.