## LENON v. BRODIE.

### Opinion delivered December 24, 1906.

1. APPEAL—WHEN EVIDENCE BROUGHT UP.—Where the parties to a chancery cause agreed that depositions of witnesses should be taken *ore tenus* at the bar of the court, and should thereafter be reduced to writing and filed, which was done, the clerk's certificate to the transcript reciting that it includes the evidence taken *ore tenus* is sufficient to show that such oral evidence is embodied in the transcript. (Page 215.)

2. IMPROVEMENT DISTRICT—EFFECT OF INCLUDING OR EXCLUDING PROPERTY.— As the action of a city council in including certain property within an improvement district is conclusive that it adjoins the locality to be affected, except when attacked for fraud or mistake, so its action in excluding certain property therefrom is conclusive unless it appears to have been left out through fraud or mistake. (Page 215.)

3. ASSESSMENT OF CHURCH AND SCHOOL PROPERTY.—In ascertaining the value of the property of churches and private schools for the purpose of forming an improvement district, the city council is required, by Kirby's Digest, § 5717, to be governed by the valuation which the assessor is required by Kirby's Digest, § 6987, to place upon such property. (Page 218.)

4. SAME—ASSESSMENT OF STREET RAILWAY.—A street railway being personal property, its value should not be included in the valuation of real property in ascertaining whether the petition for a local improvement was signed by a majority in value of the owners of real property in such district. (Page 218.)

5. SAME—IMPEACHMENT.—The validity of a tax assessment against a local improvement district can not be impeached on the ground that there was no competent evidence before the city council to show that the second petition was signed by a majority in value of the real property owners in the district. (Page 219.)

6. SAME—RIGHT TO WITHDRAW SIGNATURES FROM PETITION.—After a board of improvement has been appointed and the members have taken the oath of office, the city council has no authority to permit signers of the second petition to withdraw their signatures therefrom. (Page 219.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*W. B. Brooks* and *DeE. Bradshaw,* for appellants.

1. After the city council has appointed commissioners, names of petitioners can not then be withdrawn from the peti-

tion. Such a procedure could have .no other .effect than to create endless uncertainty and confusion. There is no provision in the law for protests, and the question presented here was not before the court in the Rector case, 50 Ark. 116; and the Watkins case, 59 Ark. 358, was determined upon the issue that the district was formed for one purpose, and was converted into a district for an entirely different purpose.

For decisions in analogous cases, see 1 Sheld. 180; 57 Ala. 13; 18 Ohio, C. C. Rep. 605; 5 Ohio, N. P. 123. See also 28 N. Y. 605; 24 N. J. L. 385; 112 Ind. 122; 30 N. E. 1095.

The decision in 71 Ark. 4 covers every proposition involved in the case, and is controlling. As in the case of the three-mile law, the local improvement district law makes no provision for protests. A petition in such case is in the nature of an election; and when it is presented to the city council and acted upon, the ballot is cast, and a person so voting (petitioning) can not change his vote. 70 Ark. 175; 40 Ark. 290; 51 Ark. 164. When the city council, the agent of the property owners, appointed the .board of commissioners upon petition of the majority, the board became the agent of the property owners, and the petitioners were bound by its acts. 70 Ark. 451; 55 Ark. 148.

2. The burden is on plaintiff to show that a majority in value did not sign the second petition. The last assessment on file in the county clerk's office is fixed by statute as the source of determining .the majority in value. Kirby's Digest, § 5717.

3. The expression of an opinion or belief, if so intended and understood, is not a representation of fact, and, even if false, does not amount to fraud. 14 Am. & Eng. Enc. of L. 34; *ib.* 39; *ib.* 47; 20 Cyc. 17; *ib.* 18; 1 Ark. 31; 68 Ia. 386; 86 U. S. 146. In the absence of injury, fraud affords no ground for judicial action. 11 Ark. 378; 43 Ark. 454. An injury can not result to one on account of an improvement. 71 Ark. 305; 20 Cyc. 13.

4. The board of commissioners are not bound to wait until after the levy of an assessment before making a contract. The assessment may be made either before or after the completion of the improvement. 25 Am. & Eng. Enc. of L. 1219, note 4.

5. The property owners who signed the second petition are estopped to deny or change the act. Herman on Estoppel,

§ 6; *ib.* § § 3 and 8; 33· Ark. 465; 35 Ark. 376; 52 Ark. 212; 31 Ark. 356; 2 Reid, Corp. Finance, § 572; 69 Ark. 287; 57 Cal. 406; 59 Ark. 513; 14 L. R. A. 575; 42 Ark. 152.

6. The boundaries of the district are within the discretion of the petitioners. "A tax for local improvement should be distributed among, and imposed upon, all equally, standing in like relation." 44 Vt. 186; 48 Ark. 383. And the action of the city council in defining the boundaries of the district is conclusive unless attacked for fraud or demonstrable mistake. 52 Ark. 107. In this case there is no proof that any real estate was left out of the district through fraud. The decision of the question of what property should be included or excluded rests with the Legislature or the subordinate body to which it submits the question. Gray, Lim. Taxing Power, 1888; 1 Abbott, Corp. 347 a; 60 Ia. 29; 120 Ill. 269; 128 Ill. 367; 2 Smith, Mun. Corp. 1240. See also 40 Kan. 353; 71 Mo. 493; 66 Pa. 454; 32 Ia. 271.

7. The value fixed by the assessor upon the church and school property included in the district, and not the market value of such property, is the proper value to be considered in determining the amount of the majority petition. Kirby's Digest, § § 5717, 6976, 6987; 69 Ark. 68.

8. Street. car property in the street is not subject to the assessment. Special assessments can be imposed on real property only. Kirby's Digest, § 5677; 25 Am. & Eng. Enc. of L. 1184, note 3; *ib.* 1188, note 6; 69 Ark. 68.

*Robt. Martin,* for appellees.

1. The only means by which the testimony in the case could make a part of the record (the same having been taken *ore tenus* at the bar of court) is by identifying it in the decree, or by a bill of exceptions, and neither has been done.

2. The constitutional provision for improvement districts, to be based upon the consent of the majority in value of the property holders owning property adjoining the locality to be affected, limits the power of the city council, and it is not authorized to leave out property that is in the district to be affected. Const. art. 19, § 27; 52 Ark. 107; 48 Ark. 270; Kirby's Digest, § 5676; 69 Ark. 68; 181 U. S. 351.

3. Though not subject to general taxation, church prop-
erty is subject to assessment for local improvements, and extra-
neous proof of its value may be made. 69 Ark. 72. When the
true value, as proved, of Winfield Church and the Arkansas
Baptist College is considered, the majority in value is reduced
to a minority.

4. In determining whether or not a majority in value
had signed the petition, the city council were required to take
and be governed by the valuation placed upon the property as
shown by the last county assessment on file in the county
clerk's office. Kirby's Digest, § 5717. The county clerk's cer-
tificate attached to the petition was not sufficient, but the council
should have required the production of the assessment books, or
an exemplification thereof, or at least an examination of the
books by a committee.

5. Until the rights of third parties intervene, a petitioner has
the right to withdraw his name from the petition asking for
the improvement. The proceeding is in the nature of giving
a letter of attorney. 31 Ark. 720; 59 Ark. 357. The district
is the agent of the property owners (55 Ark. 157); and, being
so, they have the right to revoke their agent's authority when
they find that the agency will not be profitable, if the rights of
third parties have not intervened. 88 Pa. 314; 57 Ala. 13;
42 Ind. 125; 58 N. J. 289; 63 N. Y. Supp. 878; 52 N. Y. 296.

BATTLE, J. This appeal involves the validity of the organ-
ization of "Street Improvement District No. 117," of the city of
Little Rock. On October 23, 1905, the petition of more than
ten owners, resident in the district, was presented to the city
council of Little Rock, asking for the laying off of "Street Im-
provement District No. 117," including therein the real property
for 150 feet on each side of Fifteenth Street from Main to
Pulaski, Pulaski from Fifteenth to Sixteenth, and Sixteenth
from Pulaski Street to Park Avenue.

Fifteenth and Sixteenth streets run about east and west,
and Pulaski Street and Park Avenue about north and south.
Through the district, from east to west, a street railway is con-
structed and operated. The owner of the street railway, in con-
sideration of the franchise granted it by the city, contracted to
pave the streets over which its tracks are laid, between the

tracks and for two feet on each side thereof, with the same character of material, and in like manner, as the remaining portion of the street is paved, and to change the material used from time to time as that on the other portion of the street may be changed, using the same kind of material.

On the 20th of November, 1905, in response to the petition, the council passed an ordinance establishing the district for paving, except the portion of the street the car company are bound to pave. On the 8th of January, 1906, and in less than three months after the ordinance establishing the district was passed, a majority in value of the owners of real property within the district presented their petition to the city council, which we shall call the second petition, asking that the improvement be made and the costs thereof assessed and charged upon the real property within the district, and asking for the appointment of three persons for a board of improvement. The county clerk of Pulaski County certified that the total assessed value of real estate within the district was $236,215, and that petitioners on second petition owned real property in the district of the assessed value of $148,900, showing a majority in value of $30,872 in favor of the petition. The council granted the petition, and elected Lewis Rhoton, George C. Naylor and Miles Scull members of the board of improvement; and they qualified as such board.

Three lots on the northwest corner of Fifteenth and Pulaski streets, three lots on the southeast corner of Sixteenth and Pulaski streets, and three lots on either side of Sixteenth Street and fronting on the west side of Park Avenue, were not included in the district. But the improvement nowhere runs by or alongside of any of these lots. The value of so much of the street railway as is in the district was not estimated and included in the valuation of the property in the district in determining the total value of such property and whether a majority in value of the owners of the real property in the district signed the second petition.

The board employed an engineer to form plans for the improvement of the district and to estimate the cost of the same, and on the 5th day of February, 1906, filed its report to the city council; and on the 16th day of April, 1906, filed an ad-

ditional report, stating that the cost of the improvement to be made by the district would be about $40,500, and that it had procured donations of $18,500 from the city of Little Rock and the county of Pulaski.

On the 16th day of April, 1906, nearly five months after the passage and publication of the ordinance laying off the district, a petition was presented to the city council by T. B. Martin and others, protesting against the maintenance of the improvement district, and asking that the ordinance creating same be repealed and the "commissioners be discharged." A sufficient number of the original signers of the second petition signed the petition of T. B. Martin to reduce the majority to a minority, if their names could be taken off the second petition in this manner after the council had acted upon it. The council refused to consider Martin's petition, but referred it to the board of improvement.

On the first day of May, 1906, John Brodie and others brought a suit, in the Pulaski Chancery Court, against W. E. Lenon, mayor, and the city council, of Little Rock, and the board of improvement, and others, and, among other things, alleged in their complaint "that Mayor W. E. Lenon and others circulated a petition for the formation of an improvement district, and that a number of citizens in said district who signed the petition for the assessment of benefits were induced to do so after one or two calls for that purpose, and by false and fraudulent statements that it would take an assessment not exceeding one per cent. per annum for eight years, and to some that it would probably not be more than one per cent. for five years; that the statements were made for the purpose of fraudulently inducing the citizens in the district to sign the petition. * * * That a large number of the persons who signed the petition for the levying of an assessment signed a protest or objection to any further effort on the part of any one looking to the carrying out of the improvement (giving list of names). * * * That a majority in value of the owners of real property within the district have not petitioned the city council of the city of Little Rock to levy any assessment for said pretended district. * * * That the property in the district prior to March 1, 1906, according to its assessed value, amounted to

$243,450, and the certificate of the county clerk shows that persons owning property in the district assessed in the sum of $148,990 had petitioned for the district; that persons owning property in the district who are now petitioning for it represent property valued at $77,420, thus showing that persons owning property valued at $166,030 are against the district. That, as a matter of fact, the owners of property valued at $123,640 have protested against the formation of the district, thus showing the majority in value of property against the district to be $88,-610. * * * That it is the duty of the street car company to pave between the car tracks and two feet on either side thereof. That it is the real contractor, and that the pretended contractor is acting in the interest of the street car company. * * * That the city engineer who laid off the district left out all the street car property in said district, although it will be benefited more than any other property in the district, and that the ordinance of the city of Little Rock granting the charter to the Little Rock Traction & Electric Company seven years before its old charter had expired, requiring the street car company to pave within its track and two feet on each side thereof, was nothing more than a part of the consideration for the charter rights and privileges granted, and does not exempt it from taxation or from the payment of its proportionate benefit in any improvement district. * * * That at first persons representing in value $148,980 petitioned for the assessment of their property. That persons owning property valued at $71,-560 on the first petition, together with persons owning property valued at $52,080, petitioned the city council against levying an assessment. That persons owning property in the district valued at $166,030 under the law are opposed to the levying of an assessment on their property, and that persons owning property valued at $77,420 are petitioning for the assessment."

And plaintiffs asked that the court declare the ordinance by which the district in question was created illegal; that the board of improvement be perpetually enjoined from acting as such; and that the city council be inhibited from completing the formation of the district, and for other relief.

The board of improvement answered, and the city council demurred, to the complaint.

The court, having heard all the evidence adduced, declared the law to be "that any person signing the second petition had a right to withdraw his name after the same had been filed and board of improvement and of assessors had been appointed, and before the final levy was made by the city council," and granted the complaint on that ground alone. The defendant appealed.

Appellees insist that "there is nothing in the transcript to show that all of the testimony taken in this case has been embodied" therein. It was agreed by all parties that the evidence in this cause, "though actually taken *ore tenus* at the bar of the court, should be treated as depositions." It appears at some time to have been reduced to writing and indorsed, "Depositions filed in my office July 23, 1906. [Signed] F. A. Garrett, Chancery Clerk." In the decree, after reciting, in part, upon what the cause was heard, the court, continuing, said: "The depositions of witnesses taken *ore tenus* at the bar of the court and agreed to be filed and used as depositions in the case." The clerk, in his certificate to the transcript, says: "Foregoing 403 pages of above-written matter (which includes the evidence taken *ore tenus*), contains a true, correct and compared transcript of all the pleadings, papers, files and entries of proceedings in the action named, as hath appeared by comparing the same with the original thereof now on file in my office." We think that this is sufficient to show the evidence upon which the cause was heard.

Appellees argue that "Street Improvement District No. 117," in the city of Little Rock, was not legally organized, and that it does not contain the "three lots on the northwest corner of Fifteenth and Pulaski streets, three lots on the southwest corner of Sixteenth and Pulaski streets, and three lots on either side of Sixteenth Street fronting on the west side of Park Avenue," they being in the locality to be affected and in the same condition as the property included in the district. But this contention is not correct. Section 27 of article 19 of the Constitution provides: "Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law,

to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform." Sections 5664 and 5665 of Kirby's Digest provide: "The council of any city of the first or second class, or any incorporated town, may assess all real property within such city, or within any district thereof, for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature, in the manner hereinafter set forth." Section 5665. "When any ten resident owners of real property in any such city, or incorporated town, or any portion thereof, shall petition the city or town council to take steps toward the making of any such local improvement, it shall be the duty of the council to at once lay off the whole city or town, if the whole of the desired improvement be general and local in its nature to said city or town, or the portion thereof mentioned in the petition, if it be limited to a part of said city or town only, into one or more improvement districts, designating the boundaries of such district so that it may be easily distinguished; and each district, if more than one, shall be designated by number and by the object of the proposed improvement." It appears from these sections that the Legislature has imposed the duty of forming improvement districts, and defining their boundaries, upon the city councils. This done, the locality to be affected is fixed. The statute then provides that those owning real property in such locality may give their consent to assessments upon their property to pay for the improvements. Section 5667 says: "If, within three months after the publication of any such ordinance, a majority in value of owners of real property within such district adjoining the locality to be affected shall present to the council a petition praying that such improvements be made, which petition shall designate the nature of the improvements to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district or districts, the city council shall at once appoint three persons, owners of real property therein, who shall compose a board of improvement for the district." Upon taking the oath of office within ten days after their appointment, and electing one of their number chairman,

they become organized and qualified for the transaction of business and the performance of all the duties imposed upon them by law; and the district is completely organized for the purpose for which it was created.

. Judge Cooley says: "The whole subject of taxing districts belongs to the Legislature; so much is unquestionable. The authority may be exercised directly, or, in the case of local taxes, it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be conclusive as if taken by the Legislature itself. It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits can not be attacked on the ground of error in judgment regarding the special benefits, and defeated by satisfying the court that no special and peculiar benefits are received. If the legislation has fixed the district, and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action must in general be deemed to be conclusive. No doubt there may be exceptions." 2 Cooley on Taxation, (3 Ed.), pp. 1207 and 1208. And he then proceeds to mention exceptions.

In *Little Rock* v. *Katzenstein,* 52 Ark. 107, it is said: "To the General Assembly, then, was delegated the task of providing agencies for the accomplishment of these improvements. The General Assembly, in the exercise of a well recognized constitutional power, imposed the duty of forming improvement districts, and defining their boundaries, upon the various city councils. The city council is invested with discretion in this behalf, necessary to a just performance of the duty; and when it has acted, the property included by it in any district is *prima facie* adjoining the locality to be affected. We conclude, therefore, in answer to the two queries originally propounded.

*    *    *    *    *    *    *    *    *    *    *  .  *    *  .  *    *

"Second. That the action of the city council, in including property in an improvement district, is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake."

The city council is invested with the same discretion in excluding real property from a district as it is in including it,

and the same conclusiveness ought to and does attend its action, the reasons for the same being equally as strong or stronger. The property to be included ought to adjoin the locality to be affected. The statute says, "within such district adjoining the locality to be affected." The lots excluded in this case are not adjoining the district, but entirely disconnected, and they do not appear to have been left out through fraud or mistake.

It is said that the names of the majority of the owners in value of the real property in the district were not signed to the second petition. The reason given for this contention is that the value of the Winfield Church and the Arkansas Baptist College property, which are in the district, was not included in the valuation of the real property in the district, but the assessed value instead. That was in accordance with the law. The statute provides: "The assessor, at the time of making the assessment of real property subject to taxation, shall enter in a separate list pertinent descriptions of all * * * public schoolhouses, houses used exclusively for public worship, * * * and public buildings and property used exclusively for any public purposes, with the lot or tract of land on which said house or institution or public building is situated, and which are by law exempt from taxation, and the value thereof." Kirby's Digest, § 6987. Another statute provides: "In ascertaining whether the petition for improvement of any kind is signed by a majority of the owners in value of the real property in the district adjoining the property to be affected, the council shall take and be governed by the valuation placed upon the property as shown by the last county assessment on file in the county clerk's office." Kirby's Digest, § 5717. The Winfield Church was assessed at $8,150. The Baptist College and real property were assessed at $5,800. The majority of the assessed value of the real property in the district belonging to those who signed the second petition amounted to $33,472.50. The assessed value of the property of the church and college and of the real property of those persons who were induced to sign the second petition by misrepresentation, deducted from the $33,472.50, still leaves a majority of $9,092.50 in favor of the signers of the second petition.

The value of the street railway in the district ought not to

have been included in the valuation of real property in ascertaining whether the second petition was signed by a majority of the owners in value of the real property in the district. The company owning it has "no easement or freehold interest in the soil, or exclusive control of the highway in which a location is granted to lay tracks and operate the road. The right conferred is to use the way within its location in common with others, and not exclusively for its own benefit. The whole way is as fully open to the lawful use of travelers after the road is built and in operation as before." *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway Co.,* 187 Mass. 500. The owners of real property on either side of the street own to the middle of the street subject to the public easement. All its property is required to be assessed for taxation as personalty. Kirby's Digest, § 6936. And therefore is not real property, within the meaning and signification attached to those words by the statutes governing improvement districts. Kirby's Digest, § 5673.

Appellees say that there was no competent evidence before the city council to show that the second petition was signed by a majority in value of the owners of the real property of the district. That question is not presented for consideration. If the validity of a tax assessment against the property of the district were attacked, it would be proper to show that the second petition was not signed by such majority; and that could not be shown by evidence that the city council received incompetent evidence, but by evidence that it was not so signed.

Could any of the signers of the second petition withdraw their names therefrom after the appointment of the board of improvement? It was then too late. The petition had answered its purpose, and was no longer subject to the action of the city council. When the members of the board accepted their appointment, and took the oath of office, they became vested with complete control over the construction of the improvement, with the power to make all contracts necessary to be made in respect thereto, with power to borrow money, to institute suits in its name, to enforce the payment of the assessments upon the real property in its district, to disburse the money collected to pay the cost of the improvement, and with the power, except when the cost of the improvement exceeds twenty per centum of the as-

sesed value of the real property, to compel the city council by mandamus to make further assessments upon the real property to complete the improvement. The city council has no power to abolish the improvement district and prohibit the construction of the improvement unless it be by refusing to make an assessment when the estimated cost of the improvement exceed twenty per cent. of the assessed value of the real property in the district. *Morrilton Waterworks Improvement District* v. *Earl,* 71 Ark. 11. It is obvious that the signers of the second petition could not withdraw their names after the appointment of the members of the board of improvement. The power then had passed from them, and can not be recalled by their own acts.

The decree of the chancery court is reversed, and the cause is remanded with directions to the court to dismiss the complaint for want of equity.

HILL, C. J., and McCULLOCH, J., concur in the opinion and judgment. WOOD and RIDDICK, JJ., concur in the judgment, but dissent from the opinion.