## LITTLE ROCK *v.* BOULLIOUN.

### Opinion delivered May 31, 1926.

1. MUNICIPAL CORPORATIONS—ANNEX TO IMPROVEMENT DISTRICT—
MANDAMUS.—Under Crawford & Moses' Dig., § 5733, providing
for annexation of territory to an improvement district in a city or
town, which provides that the city or town council shall hear
protests and make a finding on the question whether a majority
in value of the owners of real property in the territory sought to
be annexed have signed such petition, and that their findings
"shall have all the force and effect of a judgment, and shall be
conclusive" unless suit is brought to review it, and that, in case
the finding is in favor of the petitioners, the territory sought to
be annexed shall become a part of the improvement district, *held*
that the council has no discretion to go behind the face of the
petition and determine whether or not the annexation is appro-
priate, and may be compelled to pass the ordinance of annexation
unless it is shown that a majority in value did not sign the peti-
tion or there was an obvious mistake in the inclusion or exclusion
of property.

2. MUNICIPAL CORPORATIONS—ANNEX TO STREET IMPROVEMENT DIS-
TRICT.—Although it is customary, in creating street improve-
ment districts in cities and towns, to extend the bounds of the
districts 150 feet from the street line, the fact that a petition for
annexing territory to an improvement district in one place
included more than 150 feet and in another place 12 feet less than
150 feet from such street does not indicate such a demonstrable
mistake as would render the annexation proceedings void.

3. MUNICIPAL CORPORATIONS—ANNEX TO IMPROVEMENT DISTRICT—
LIMIT OF COST.—The fact that the maximum cost of a street
improvement, expressed in a petition for annexation of territory
to a street improvement district, exceeds the maximum expressed
in the petition for the original district, does not render the pro-
ceedings void, as the statute (Crawford & Moses' Dig., § 5733)
which requires the added improvement to be made "on the same
basis as if said territory was included in the original district" is
also a limitation on the cost of the added improvement, and is
controlling.

Appeal from Pulaski Chancery Court; *John E.
Martineau,* Chancellor; affirmed.

*J. C. Marshall,* for appellant.

*Melbourne M. Martin,* for appellee.

*E. G. Shoffner, amicus curiae.*

McCULLOCH, C. J.  A local improvement district, designated as Street Improvement District No. 349 of the city of Little Rock, was regularly organized for the purpose of paving portions of Summit Avenue and Ninth Street adjoining the intersection of those streets, and on August 29, 1925, there was filed with the city council a petition purporting to be signed by a majority of the owners of real property in the locality to be affected, praying for the annexation of adjoining territory (describing it) to District No. 349 for the purpose of paving Schiller Avenue from Ninth to Twelfth, Eleventh Street from Schiller to Marshall, and Marshall Street from Seventh to Wright Avenue.  Notice of the proceedings was given in accordance with the statute (Crawford & Moses' Digest, § 5733), and, after hearing protests, the city council refused to pass an ordinance for the annexation of territory as requested in the petition.  The present action was instituted by appellee, who is the owner of property and one of the commissioners of the district, to-compel the city council to pass the ordinance in accordance with the prayer of the petition.  On hearing the cause the chancery court rendered a decree in accordance with the prayer of appellee's complaint, and an appeal has been duly prosecuted to this court.

It is the contention of counsel for appellants that the statute authorizing the organization of original districts by ordinance of a city or town council, and likewise the statute authorizing the annexation of territory, vests in the city council judgment and discretion to determine whether or not such organization or addition thereto is just and appropriate, and that the discretion of the council cannot be controlled by mandamus.  In other words, the contention is, as we understand it, that the action of a municipal council in refusing to create a district or to annex territory thereto cannot be controlled, unless such action is fraudulent or arbitrary.

It will be seen, as we proceed with the discussion of this question, that there is a marked difference between the language of the statute authorizing the crea-

tion of an original district and the one authorizing annexation of property thereto for additional improvement. The only constitutional provision in regard to local improvements in municipalities is § 27, art. 19, which reads as follows:

"Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property-holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform."

Pursuant to this constitutional provision, the General Assembly enacted an appropriate statute for the organization of improvement districts and proceedings thereunder. The section of the statute which authorizes the organization of such districts appears now, with slight amendment to the original statute, as § 5649, Crawford & Moses' Digest, and reads as follows:

"When any ten owners of real property in any such city, or incorporated town, or any portion thereof, shall petition the city or town council to take steps toward making of any such local improvements, it shall be the duty of the council to at once lay off the whole city or town, if the whole of the desired improvement be general and local in its nature to said city or town, or the portion thereof mentioned in the petition, if it be limited to a part of said city or town only, into one or more improvement districts, designating the boundaries of such district so that it may be easily distinguished; and each district, if more than one, shall be designated by number and by the object of the proposed improvement."

It will be observed that the Constitution places no restriction upon the method of imposing taxes for local improvements, except that a majority in value of the property holders must consent and that the assessments "shall be *ad valorem* and uniform." The silence of the Constitution in other respects left the Legislature in

possession of complete power to provide for the organization of such districts and the proceedings thereunder, hence the court has only had to deal with the interpretation of the legislative enactments on that subject.

In construing the above-quoted section of the statute as originally enacted, this court, in the case of *Little Rock* v. *Katzenstein,* 52 Ark. 107, said: "The General Assembly, in the exercise of a well-recognized constitutional power, imposed the duty of forming improvement districts and defining their boundaries upon the various city councils. The city council is invested with discretion, in this behalf, necessary to a just performance of the duty, and, when it has acted, the property included by it in any district is *prima facie* adjoining the locality to be affected. * * * That the action of the city council in including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake." That interpretation has frequently been approved in later decisions of this court. *Matthews* v. *Kimball,* 70 Ark. 451; *Lenon* v. *Brodie,* 81 Ark. 208; *Ferguson* v. *McClain,* 113 Ark. 193; *Freeze* v. *Improvement District,* 126 Ark. 172.

The validity of the organization of the original district (Street Improvement District No. 349) and the proceedings thereunder is not involved in the present litigation, and the only controversy arises as to the present attempt to make an annexation thereto. It is unnecessary therefore to determine in this case the extent and full effect of the discretion of a city council in creating or refusing to create an original district, and to what extent, if any, the courts will disturb that discretion. What we have to deal with now is the effect of the action of the city council in refusing to proceed with the annexation. The statute on that subject reads as follows:

"Section 5733. When persons claiming to be a majority in value of the owners of real property in any territory contiguous to any improvement district

organized in any city or town desire that said territory shall be annexed to such improvement district, they may present their petition in writing to the city or town council, describing the territory to be annexed and the character of the improvement desired. Thereupon the city or town council shall direct the clerk or recorder to publish for two weeks, in some newspaper issued and having a general circulation in the county where such city or town is situated, a notice calling upon the property owners to appear before said council on a day named, and show cause for or against such annexation. On the day named in said notice, the city or town council shall hear all persons who desire to be heard on the question whether a majority in value of the owners of real property in the territory sought to be annexed have signed such petition, and its finding shall have all the force and effect of a judgment, and shall be conclusive, unless, within thirty days thereafter, suit is brought in the chancery court to review it. The finding of the council shall be expressed in an ordinance in case it is in favor of the petitioners, and in that event the territory sought to be annexed shall become a part of the improvement district, and the improvements petitioned for shall be made by the commissioners. The commissioners shall make the assessment for said improvement on the territory annexed under the provision of this act on the same basis as if said territory was included in the original district. If petitioned for, the improvement in the territory annexed may be of different material or of a different method of construction from that in the original district." Crawford & Moses' Digest.

The distinction between this statute and the one already quoted authorizing the organization of the district is noticeable, for, in the first statute, the district is created upon the petition of ten owners of real property situated in the territory to be affected, whereas the annexation is made upon the petition of a majority of the owners of property. The annexation statute in express terms authorizes the city council to hear protests and to

make a finding "on the question whether a majority in value of the owners of real property in the territory sought to be annexed have signed such petition," and provides that the findings of the council "shall have all the force and effect of a judgment, and shall be conclusive, unless, within thirty days thereafter, suit is brought in the chancery court to review it." There is no authority expressly conferred upon the council to determine any other question, except whether the majority of the owners of property has signed the petition, and the language does not warrant the implication of any further power, for the statute reads that the findings of the council "shall be expressed in an ordinance in case it is in favor of the petitioners, and in that event the territory sought to be annexed shall become a part of the improvement district." In dealing with a petition for annexation, the city council is confronted with the expressed will of the majority of the owners of property in the affected territory, acting within their constitutional rights in consenting to the improvement. It was the manifest design of the lawmakers, in providing for an annexation to be made only on the petition of a majority of the property owners, to leave no discretion in the city council other than to ascertain whether or not the petition had been signed by a majority. The statute contains a direct command that, when it is ascertained that a majority has signed, a finding to that effect "shall be expressed in an ordinance * * * and in that event the territory sought to be annexed shall become a part of the improvement district." If the petition is defective on its face, so that it does not comply with the statute, the city council is not bound to do a vain and useless thing by passing an ordinance which is void, but the council has no discretion which permits them to go behind the face of the petition to determine whether or not the annexation is appropriate. The property owners themselves are authorized to select the territory to be annexed and to decide the question whether or not the annexation shall be accomplished, and the wishes of

the majority as expressed in the petition are conclusive, except for fraud or demonstrable mistake in the selection of the territory to be annexed. Our conclusion therefore on this feature of the case is that the city council had no right to refuse to pass the ordinance, unless it is shown that a majority in value did not sign the petition or that there was an obvious mistake in the inclusion or exclusion of property.

It is contended that there was such an obvious mistake in the inclusion of parts of certain lots and in the exclusion of others.

The general plan fixing the boundaries was to follow what was said to be the prevailing custom of extending the bounds of the district to the middle line of the blocks, in other words, a distance of one hundred fifty feet from the street line. In several respects this general plan or custom was departed from. In two instances one block occupied as a hospital and another as a school—more than one hundred fifty feet next to the street to be improved—were included, so as to include in the district the whole of the lots covered by the building, whereas in another instance and in another place a strip twelve feet wide, within one hundred fifty feet of the street to be improved, was omitted. It is contended that this presents an obvious instance of discrimination between property similarly situated, in that a part of the school and hospital property is included while other property under similar circumstances is excluded, and also that the exclusion of the twelve-foot strip mentioned above is discriminatory and prevents uniformity in the special taxes to be levied to construct the improvement. Counsel rely upon *Heinemann* v. *Sweatt,* 130 Ark. 70, and *Sanders* v. *Wilman,* 160 Ark. 133, and other decisions where we held that the organization of a district was rendered void by the exclusion of property which would be obviously and necessarily benefited. Those cases, however, and all of our cases under similar circumstances, presented facts where outlying tracts or lots were included in the district, but other tracts lying between them and the improvement,

which would necessarily be benefited, were omitted. There is no such question involved in the present case. There is no statute or rule of law requiring that in street improvement districts the property to be assessed shall be within a given distance of the improvement. It seems to be merely a custom to include property within one hundred fifty feet of the improvement, and it cannot be said that the variation of this rule necessarily presents a case of discrimination. In other words, there is no demonstrable mistake involved which renders the annexation proceedings void.

It is next contended that the annexation proceeding is void, and that the city council should not be compelled to pass the ordinance for the reason that the petition specified a maximum cost of the improvement in excess of the maximum expressed in the original petition for the organization of District No. 349. The petition for the annexation specifies a maximum cost of fifty per cent. of the value of the real property in the territory as shown by the last county assessment, and in the petition of property owners for the improvement in District No. 349 there was a specification that the cost of the improvement should not exceed sixty per cent. of the value of the real property in the district as shown by the last preceding assessment. The specification in the petition for annexation related to the assessment of 1925, and the specification in the original petition related to the assessment of 1922. Oral and documentary testimony was introduced to prove that the maximum cost expressed in the annexation petition was in excess of that expressed in the original petition, and the contention is that this invalidated the proceedings and absolved the council from passing the ordinance. A review of the law on this subject therefore becomes unnecessary.

The statute in force at the time of the organization of District No. 349 (Acts 1921, p. 416) provided that the petition of property owners for the improvement should specify the maximum percentage of cost of the improvement with reference to the value of the real estate in

the district as shown by the last preceding county assessment. The statute governing the annexation proceedings contains no such requirement, but it provides that the assessments on the annexed territory to pay for the cost of the added improvement shall be made "on the same basis as if said territory was included in the original district." This court decided in *Pledger* v. *Soltz,* 169 Ark. 1125, that the percentage of cost of the added improvement must be the same as that of the original improvement, otherwise the assessments would not be on the same basis as required by the statute. Now, it is seen that this statute governing annexation, as interpreted by this court in the case just referred to, limits the maximum cost of the improvement, and of course that limit cannot be exceeded. But we do not think that the cost expressed in the petition for annexation, even though shown to exceed the maximum expressed in the original petition, necessarily renders the petition void, for such a specification is not a requirement that the cost shall reach the maximum, hence it is not in conflict with the statute, which, of course, must control. In other words, the maximum expressed in the petition for annexation is necessarily subordinate to the maximum expressed in the statute itself, and the commissioners, in attempting to make the improvement, must be controlled by the statute, and, if the maximum expressed in the petition exceeds that of the maximum allowed by law, then it must be disregarded. There are two limitations placed upon the commissioners, one the maximum expressed in the petition and the other in the law itself, and the commissioners are required to keep themselves within both limitations, whichever should turn out to be the lowest or most restrictive. Therefore the variance between the two maximums was not fatal to the validity of the proceedings. Before any expense is incurred in the construction of the added improvement, the commissioners must form plans and ascertain the cost and assess the benefits on the basis prescribed by the statute, and, if

there is an attempt on the part of the commissioners to construct the improvement in excess of the maximum specified in the statute itself, then the property owners have the right to prevent such violation by resort to an action in a court of chancery for that purpose. The effort to determine the actual cost of the improvement now is premature, for the petition itself does not require the commissioners to violate the statute, and objection cannot be made to the proceedings until it develops that the cost will exceed the limitation fixed by law.

It is also contended that the signature covering the property of the Baptist Hospital and the Junior High School of Little Rock School District were not authorized and should be stricken from the petition, thus reducing it below the majority. Without going into the details of this matter, we think that the proof shows that the signatures were authorized. The petition was signed in behalf of the Baptist State Hospital by Dr. C. E. Witt, a member of the committee or board of control, and there was a resolution passed authorizing Dr. Witt and another member, Mr. Pugh, to "take such steps as seemed best and necessary to get our property in above mentioned district." The minutes were thereafter amended to as to show that "Dr. Witt had full authority to sign the petition in matter of getting streets adjacent to hospital paved." We think that this was sufficient to show Dr. Witt's authority to sign the petition. *Lewis* v. *Forrest City Dist.*, 156 Ark. 356. It is undisputed that the petition for the school property was signed by the directors in full meeting. There is proof of some misunderstanding about the facts on which the signature was obtained, but the proof shows clearly that it was the intention of the directors to sign the petition, if already signed by a majority, and it is shown that there was in fact a majority at that time, when the petition was signed by the school directors.

Our conclusion upon the whole case is that the lower court was correct in holding that the proceedings were

.regular and in compelling. the city council to pass the ordinance in accordance with the prayer of the petition. The decree is therefore affirmed.

HART and HUMPHREYS, JJ., dissent.