NOBLE ET AL. *v.* THE CITY OF VINCENNES.

CITY.—*Aid to Railroad Company.—Petition.—Remonstrance.*—Where a petition asking a city to make a donation in aid of the construction of a railroad has been presented to the common council and referred to a committee of the council, persons who signed the petition may, by a remonstrance, withdraw their names from the petition while the same is in the hands of the committee; and if, after such withdrawal, there is not a sufficient number of petitioners asking the donation, the council cannot make the same.

| 42 | 125 |
| 138 | 673 |
| 42 | 125 |
| 162 | 173 |

APPEAL from the Knox Common Pleas.

DOWNEY, J.—This was an action to enjoin the city from making a donation to the amount of one hundred thousand dollars in aid of The Vincennes and Cairo Railroad Company. The complaint shows that the plaintiffs are resident tax-payers of the city and liable to be taxed to pay the amount of said donation, if made, and for all city purposes. It is then alleged that on the 11th day of December, 1871, there was presented to the common council of said city a petition, by which the council was requested to make the donation in the sum aforesaid, payable as follows: fifty thousand dollars when the said railroad should be completed so as to connect with the Cairo & Vincennes railroad of the State of Illinois, and the two companies shall have completed their roads and have the same running regularly and for the carrying of passengers and freight from Vincennes, Indiana,

to Cairo, Illinois; and the remaining fifty thousand dollars
to be paid when the said railroad company shall have located
and built the principal machine shops of their road at Vin-
cennes, Indiana; and if the same was not done in two years,
the donation was to be void.    The road was to be built from
Vincennes, through Knox County, to a point opposite, or
nearly opposite, St. Francisville, and a bridge across the
Wabash at that point.    It is alleged that the petition pur-
ported to have been signed by four hundred and ninety
resident freeholders of the city; that the common council
referred said petition to a committee of its own members,
which, on the 8th day of January, 1872, reported to said
council that a majority of the resident freeholders of the
city had signed the petition; whereupon the council accepted
the report and directed the city attorney to prepare an ordi-
nance for the purpose of making the donation of said amount,
and determined to meet on the evening of the ninth day of
January, 1872, for the purpose of passing said ordinance; that
the council at that time failed to pass the ordinance only for
the reason that a temporary restraining order had been
granted herein.    It is further stated that after the petition
had been referred to said committee, and before any other
steps had been taken in the matter by the common council,
a remonstrance was presented to the council by two hun-
dred and. fifty-four citizens of said city, one hundred and
sixty-five of whom appear also as signers of said petition; in
which remonstrance the signers state that a petition had
been circulated purporting to be in the interest of The Vin-
cennes and Cairo Railroad Company, of Indiana, asking a
donation of one hundred thousand dollars in aid of said
road; that many of them signed their names on a blank
· page of the book upon the representation that the petition
was for the purpose of obtaining the principal machine
shops of said road and payable in twenty years in the bonds
of the city.    They further state that they find upon exami-
nation that the terms and conditions of said petition are
widely different and not as they understood them; that they

would contribute liberally to obtain machine and manufacturing shops, working from one hundred to five hundred men, within their city, but do not want to have donated fifty thousand dollars more toward the building of so short a line of road without securing capacious shops and a large force of mechanics and labourers. They wanted. to know with reasonable certainty in what way their city was to be compensated for its donation. They say that section 60 of the city charter provides, that it shall be the duty of the city council to control and do whatever may be necessary to carry into effect the substantial meaning of the petition; and they severally protest against the use of their names to said petition, and did thereby withdraw the same and remonstrate against said donations, being made, etc. It is further alleged that said one hundred and sixty-five citizens so remonstrating against making the said donation, and who severally appear as petitioners, protested against the use of their names to said petition, and thereby withdrew the same, for the reasons set forth in the remonstrance; that by the withdrawing of these one hundred and sixty-five citizens from the petition, as petitioners, there would remain only three hundred and twenty-five petitioners; and the resident freeholders of said city number at least eight hundred and fifty; that the petitioners to said petition, after those who so remonstrated have been deducted, do not constitute a majority of the resident freeholders of said city; but that the council refused to consider the remonstrance and withdrawal of said one hundred and sixty-five petitioners, and thereby only arrived at the conclusion that a majority of the resident freeholders of said city were petitioning for the making of the donation, when, in truth and in fact, the number of petitioners was and is much less than one-half the resident freeholders of said city. It is then alleged that the company has not been induced by the petition, or the proceedings of the council, to take any steps in the construction of its road; that although a majority of resident freeholders of said city do not remain petitioners, if not restrained, said city will, by

the council, make the donation aforesaid before the final hearing of this cause.

Prayer for injunction temporary and perpetual. The complaint was verified by the affidavit of one of the plaintiffs.

A demurrer to the complaint was filed by the defendant, for the reason that the court had no jurisdiction of the subject of the action, and because the said complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court, and final judgment rendered for the defendant.

The sustaining of this demurrer is the error assigned.

The position assumed by counsel for the appellants is, that the withdrawal of the one hundred and sixty-five names from the petition left less than a majority of the resident freeholders petitioning, and that for this reason the injunction ought to have been granted. The position of counsel for the appellee is, that the court had no jurisdiction of the action ; that the action of the council in deciding upon the question whether a majority of the tax-payers were petitioning or not is conclusive, and that the court can not inquire into the question. It is insisted that the question as to the number of signers to the petition is jurisdictional, and when decided by the council, that its decision is final. On this point we are referred to *The Evansville, etc., Railroad Company* v. *The City of Evansville*, 15 Ind. 395, as an authority in support of the views of the appellee. There is a difference, however, between that case and this. There the subscription had been fully made, and the action was on the subscription to enforce its payment. Here the subscription was not fully made, and the object of the action was to prevent the making of it. Not regarding that case as decisive of this, we proceed to consider the question as to the effect of the action of the petitioners in signing the remonstrance and withdrawing their names from the petition.

The statute provides, "that any city, incorporated under the general law of this State, upon petition of a majority of the resident freeholders of such city, may hereafter subscribe to

the stock of any railroad, hydraulic company, or water power, running into or through such city, or near the corporate limits of said city, or to make, on petition of the majority of the resident freeholders of such city, donations in money or the bonds of such city, to aid in the construction of any such railroad, hydraulic companies, or water power; subject, however, to the limitations, direction, and restriction named in the provisos to the sixtieth section of the act entitled, 'an act,'" etc.,"approved March 14th, 1867." 3 Ind. Stat. 114, sec. 1. The sixtieth section referred to, which has but a single proviso, reads as follows: "Any incorporated city, under this act, shall have power to borrow money to subscribe to the stock of any plank road, macadamized road, or railroad [running] into or through such city, to make donations in money, or the bonds of such city, to aid in the construction of such roads, only on petition of a majority of the resident freeholders thereof: Provided, That said donations shall not be payable, either in money or bonds, until the road in aid of which it is given shall be so far completed as to admit the running of trains from the point of commencement to such point or points as are designated in the petition, in the case of railroad, or passage of wagons, in the case of other roads, and when so far completed, it shall be obligatory on the common council of said city to contract and do whatever may be necessary to carry into effect the substantial meaning of such petitions, and the obligations herein enjoined may be enforced in the courts of this State having competent jurisdiction, on the application of any signer of such petition, or president of the road in behalf of which such donation may have been made, at any time after said petition or petitions have been presented to such common council, and for any debt in pursuance of the provisions of this section; in carrying out the intentions of the petitioners aforesaid, the common council shall add to the tax duplicate of such years thereafter, a levy sufficient to pay the annual interest on such debt or loan, with an addition of not less.

than five cents on the one hundred dollars, to create a sinking fund for the liquidation of the principal thereof, which fund, with all the increase thereof, shall be applied to the payment of such debt, and to no other purpose." Id. 93, sec. 60.

A petition is an instrument of writing, or printing, containing a prayer from the person presenting it, called the petitioner, to the body or person to whom it is presented, for the redress of some wrong, or the grant of some favor, which the latter has the right to give.    Bouv. Dic., tit. Petition.

A remonstrance is defined to be a petition to a court or deliberative body, in which those who have signed it request that something which it is in contemplation to perform shall not be done.    Id., tit. Remonstrance.

When a party who has signed a petition for the doing or granting of something afterward signs a remonstrance against the doing or granting of what he has petitioned for, it would seem reasonable that the one should counteract and destroy the effect of the other, if the remonstrance is presented before action has been had in accordance with the petition.

There would seem to be nothing irrevocable in the signing of a petition.    We conclude that when the one hundred and sixty-five of the petitioners signed and presented to the council the remonstrance protesting against that for which they had petitioned, and withdrawing their names from the petition, it stood, so far as they were concerned, as though they had never signed it.    As to the remonstrants who had not signed the petition, it seems to us that the remonstrance amounted to nothing.    The law does not provide for remonstrating as a mode of opposing the granting of the petition. The petition must be signed by a majority of the resident freeholders, and until this has been done, the council should not act.    When this condition has been fulfilled, it is immaterial as to remonstrances.    But, as we have already held, we think a petitioner by remonstrating neutralizes the effect of his petition.

Was the remonstrance in time to counteract the effect of the petition? We think it was. The petition had been presented to the council, and it had been referred to a committee of the council when the remonstrance was filed. No other steps had been taken by the council, according to the complaint, until the one hundred and sixty-five petitioners had withdrawn their names from the petition. In our opinion, there had not been, at that time, any binding and conclusive action of the council upon the petition. No right to the amount intended to be donated had accrued in favor of any one, or which could be enforced by any one.

It is expressly alleged in the complaint that the petitioners who remained after the withdrawal of the one hundred and sixty-five names from the petition did not constitute a majority of the resident freeholders of the city. Without that number, the common council had no right to make the proposed donation. *The Evansville, etc., Railroad Co.* v. *The City of Evansville, supra.*

The position contended for by counsel for the appellaee, that so soon as the petition has been presented, signed by a majority of the resident freeholders, the donation becomes at once valid and binding, can not be adopted as a just construction of the statutes in question. Some action on the part of the council seems to be necessary, and it may be essential to the rights of the petitioners that the council shall see that a compliance with the proper terms and conditions shall be secured. At all events, the council must ascertain that the petition has been signed by the requisite number of freeholders. This was not done when the remonstrance was presented. Thereafter there was not the requisite number of petitioners asking the donation.

A question suggests itself as to the power of the city council to donate fifty of the one hundred thousand dollars, on condition of the location of machine shops at Vincennes. Is it clear that the statutes in question authorize this, even upon the petition of a majority of the freeholders?

We do not decide anything as to the alleged misrepresen-

tation, upon which the signatures of the recanting petitioners were obtained.

The judgment is reversed, with costs, and the cause remanded, with instructions to overrule the demurrer to the complaint, and for further proceedings.

*W. F. Pidgeon,* for appellants.

*T. R. Cobb* and *J. M. Boyle,* for appellee.