CITY OF VALDOSTA *et al. v.* HARRIS *et al.*

ATKINSON, J.   1.   The act of 1901 (Acts 1901, p. 670), creating the charter of the City of Valdosta and containing provisions for pavement of streets on the basis of assessment of abutting property for a portion of the cost of the improvement, is not a general law having operation throughout the State, and does not render invalid the special enactment of 1921 (Acts 1921, p. 1106) providing for pavement of streets in the City of Valdosta on the basis of assessment of the entire cost of the improvement against the abutting property, on the ground that such latter act is violative of article 2, section 4, paragraph 1, of the constitution of this State (Civil Code, § 6391), which prohibits enactment of a special law in any case for which provision has been made by an existing general law, or the varying of general laws affecting private rights in any particular case except with the free consent in writing of all persons to be affected. *Lorentz v. Alexander,* 87 *Ga.* 444 (13 S. E. 632); *City of Cochran v. Lanfair,* 139 *Ga.* 249 (77 S. E. 95).

2.   The act of 1921 referred to in the preceding note does not conflict with the provision of article 1, section 1, paragraph 2, of the constitution of this State (Civil Code, § 6358), which declares that " protection to person and property is the paramount duty of government, and shall be impartial and complete;" nor with the provision of article 1, section 1, paragraph 3, of the constitution of this State (Civil Code, § 6359), which declares that " no person shall be deprived of life, liberty, or property, except by due process of law," on the ground that the act does not provide for notice and opportunity to be heard by the abutting property owners upon the question of the necessity for such street improvement, the determination of such question being legislative in character. *Speer v. Athens,* 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402); *City of Atlanta v. Hanlein,* 96 *Ga.* 381 (2) (23 S. E. 408); *Georgia R. &c. Co. v. Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935); *Georgia Railway & Electric Co. v. Atlanta,* 144 *Ga.* 722 (87 S. E. 1058); French *v.* Barber Asphalt Paving Company, 181 U. S. 324 (21 Sup. Ct. 625, 45 L. ed. 879); L. & N. R. Co. *v.* Barber &c. Co., 197 U. S. 430 (25 Sup. Ct. 466, 49 L. ed. 819).

(*a*)   The ruling in *City of Sandersville v. Bell,* 146 *Ga.* 737 (92 S. E. 218), decided by five Justices, is not binding on this court as a prec-

edent, and, in so far as it conflicts with the ruling above announced, will not be followed. The case of *Shippen Lumber Co.* v. *Elliott*, 134 *Ga.* 699 (68 S. E. 509), did not involve the question ruled above, and has no application to the case under consideration.

3. Neither does the act of 1921 conflict with the above-mentioned provisions of the constitution because it does not provide for like notice and opportunity to be heard upon the question of whether a majority of the owners of abutting property on the street to be improved had filed protests against the improvement as provided in the act. That question is also one for legislative determination.

4. The act does not violate the provisions of article 1, section 1, paragraph 2, of the constitution of this State (Civil Code, § 6358), quoted above, on the ground that it denies to owners of abutting lots on a street to be improved the equal protection of the law, in that designated streets had been previously improved under the charter of 1901, supra, providing that abutting owners should be assessed for only a portion of the cost of the improvement, and that such charter provision is still in existence. There may be different circumstances which would render it reasonable and just that particular streets be paved under one plan or the other. It is only in cases where different assessments are levied against abutting owners under the same or similar circumstances that the equal protection of the law is denied. *Arthur* v. *State*, 146 *Ga.* 827 (92 S. E. 637); *L. & N. R. Co.* v. *Barber &c. Co.*, supra.

5. Section 10 of the act, which authorizes the mayor and council to issue bonds for street improvements based upon assessments against the lot of abutting owners, " payable solely " from such assessments, and in no event to " become a liability of the " city, does not render issuance of bonds the creation of a debt by the city    (*Monk* v. *City of Moultrie*, 145 *Ga.* 843, 90 S. E. 71; *City of Waycross* v. *Tomberlin*, 146 *Ga.* 504 (5), 91 S. E. 560; *Mayor &c. of Washington* v. *Faver*, 155 *Ga.* 680 (6), (117 S. E. 653), and is not violative of the following provisions of the constitution: (a) That part of article 7, section 7, paragraph 1 (Civil Code, § 6563), which provides: " no such county, municipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law." (b) Article 7, section 10, paragraph 1 (Civil Code, § 6567), which provides that municipal corporations shall not incur any debt until provision therefor shall have been made by the municipal government.

6. Section ten of the act is not violative of that part of article 7, section 6, paragraph 1, of the constitution of this State (Civil Code, § 6561), which declares: " The General Assembly shall not authorize any . . municipal corporation . . to become a stockholder in any company, corporation, or association, or to appropriate money for, or to loan its credit to, any corporation, company, association, institution, or individual, except for purely charitable purposes," on

the ground that the plan of assessment is in effect an appropriation of money or an extension of credit by the municipality for other than a charitable purpose. The act does not purport to authorize appropriation of money or extension of credit by the municipality.

7. For similar reasons section 8 of the act, which provides for payment of assessments in ten annual payments, does not violate the provisions of the constitution quoted in the preceding note, on the ground that it is an extension of credit by the municipality for other than a charitable purpose.

8. The act of 1921 (Acts 1921, p. 1106) does not violate article 3, section 7, paragraph 17, of the constitution of this State (Civil Code, § 6445), which provides that "no law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made," on the ground that the act does not describe the law to be amended.

9. At the inception of proceedings to make a contract for a given improvement the mayor and council must publish, for a stated period, a resolution declaring that the improvement is necessary. The owners of property liable to be assessed for the improvement are required to be given notice of the resolution by publication, and may file with the clerk of council written protests against the improvement. If a majority of such owners do not file protests within fifteen days from the date of the last publication of the resolution, the mayor and council shall after such date pass a second resolution expressing a determination to proceed with the improvement and proceed further in the matter of making contracts and causing the improvement to be made. After publication of the first resolution a majority of the property owners filed protests against making the improvement, but before the expiration of the prescribed time protests were withdrawn in sufficient numbers to reduce the number to less than a majority. *Held*, that it was the right of the protestants, at any time within the period in which they were authorized to file protests, to withdraw their protests and thereby prevent them from being counted against the improvement. A sufficient number having been duly withdrawn to reduce the number of protestants to less than a majority, the mayor and council were authorized to proceed as if a majority of the property owners had never filed protests. Wilson v. Borough of Collingswood, 80 N. J. L. 626 (77 Atl. 1033); City of Sedalia &c. v. Montgomery, 227 Mo. 1 (88 S. W. 1014, 127 S. W. 50); Rodgers v. City of Ottawa, 83 Kan. 176 (109 Pac. 765); City of New Orleans v. Stewart, 18 La. Ann. 710.

(a) No limit of time after expiration of the period for filing protests was specified in which the mayor and council should take further action under the statute, preparatory to making the improvement. Jurisdiction of the mayor and council was not lost by failure to act for a term of four months after the time for filing protests had expired.

10. The act provided for letting contracts by competitive bidding. The

manner of letting contracts was provided for in section 6 as follows: The mayor and council shall by a second resolution direct the city engineer to advertise for sealed proposals, stating in the advertisement specified things as to the character of work to be done, material to be used, and specified requirements of the contractor, and the time and place when the sealed proposals will be opened. At the appointed time the mayor and council " shall examine all bids received, and without unnecessary delay award the contract to the lowest and best bidder," which shall " in no case exceed the estimate of cost submitted by the city engineer," the right being reserved to reject any and all bids. *Held,* that the act of the mayor and council in letting a contract under the foregoing provisions of the statute is not judicial in character. *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (93 S. E. 887) ; *City of Atlanta* v. *Georgia Railway & Power Co.,* 149 *Ga.* 411, 416 (110 S. E. 442) ; *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499, 509 (113 S. E. 545) ; *City of Macon* v. *Anderson,* 155 *Ga.* 607, 612 (117 S. E. 753). Relationship of a bidder to the mayor does not render the latter disqualified to award the contract to the former.

11. It was further provided, in section 6, that the second resolution should state the material to be used and the manner of construction, and define the extent, character, and width of the improvement, and should state such other matters as may be necessary to instruct the city engineer in the performance of his duties in preparing for such improvement the necessary plans, plots, profiles, specifications, and estimates; also that the resolution should state any other reasonable terms and conditions which the mayor and council shall deem proper to impose; also that the resolution shall provide that the contractor shall execute to the city a good and sufficient bond in an amount to be stated in the resolution, conditioned for the full and faithful performance of the contract and for the protection of the city and all property owners interested against any loss or damage by reason of the negligent or improper construction of the work; and that the city may also require bond in an amount to be stated in the resolution, for the maintenance of the improvement for a period of not less than five years, in the discretion of the mayor and council. It was also provided in section 6, that the resolution above mentioned shall direct the city engineer to advertise for sealed proposals for furnishing the materials and performing the work necessary in making such improvements; that the notice of such proposals shall state the street or other public place to be improved, the kinds of improvements proposed, and what, if any, bond or bonds will be required to be executed by the contractor. It was further provided that the notice above referred to should be published in a specified manner and for a stated length of time; and after publication of the notice the mayor and council shall examine all bids and award the contract to the lowest and best bidder, which contract shall in no case exceed the estimate of cost submitted by the engineer, with the plans and specifications; also that the mayor and council shall have the right to reject any and all bids and readvertise for other bids when any such bids are not

in its judgment satisfactory. A resolution was passed under section 3 of the act, by the mayor and council, declaring that they deemed it necessary "to improve by paving, either with brick, concrete, or asphalt," that section of Webster Street "from Troupe Street on the east to Patterson Street on the west, said street to be paved a width of twenty-two (22) feet, sidewalks on both sides a width of five (5) feet, said paving to be either of asphalt, concrete or brick, as may seem expedient to the mayor and council of the City of Valdosta, after receiving bids on same as provided in said act, and a granite curb shall be used on both sides of the street between the street and the sidewalks." After publication of the resolution the mayor and council passed a second resolution under section 6 of the act. The second resolution expressly referred to the above-quoted provision of the first resolution, and declared the determination to pave the above described section of Webster Street for "a width of twenty-two (22) feet, and the sidewalks on both sides a width of five (5) feet, and a granite curb shall· be used on both sides of the street between the street and the sidewalks." The resolution also required the city engineer to "perform such duties as may be necessary in preparing for such improvement, namely the making plans, plots, specifications, and estimates, and shall submit the same in writing to the clerk of the City of Valdosta, within ten (10) days from this date; and that said city engineer shall proceed at once to advertise for sealed proposals for furnishing the materials and performing the work necessary in making such improvements; and that in proceeding with the same he, the said city engineer, shall follow the law set out in section six of the act hereinbefore referred to." The resolution also declared that the contractor who may secure the work shall execute a good and sufficient bond in the sum of 100 per cent. of his bid, conditioned for the faithful performance of his contract and for the protection of the city and the property owners. After the passage of such resolution the city engineer prepared plans and specifications for the paving of the street and sidewalks and the placing of granite curbs and gutters. The plans were elaborate and accompanied by an estimate of cost of paving either by the use of asphaltic concrete or brick. After the plans were prepared the city engineer advertised for sealed bids as follows: "Sealed proposals will be received at the office of the city clerk of the City of Valdosta, Georgia, until noon April 20th, 1922, for paving certain streets and sidewalks in the City of Valdosta. Street paving to be asphalt, brick or concrete, approximately ten thousand and five hundred yards of street paving, forty-five hundred yards of concrete sidewalks, twenty-seven hundred yards of excavation, seven thousand feet of granite curb, seven thousand feet of concrete gutter. The bids will be considered by the mayor and council at a called meeting at the City Hall at three p. m., April 20th, 1922. Plans and specifications are on file in the office of the city clerk. A deposit of five dollars ($5.00) will be required for a set of plans and specifications. A certified check for five hundred dollars ($500.00) will be required with each bid, made payable to the City of Valdosta, to guarantee execution of contract and bond

if accepted. Checks to be returned to unsuccessful bidders after April 20th, 1922. Check of successful bidder to be returned after execution of contract and bond. The mayor and council of the City of Valdosta reserve the right to reject any or all bids. A satisfactory bond for 100 per cent. of amount of bid will be required of the successful bidder for the faithful performance of the contract and for a guarantee of character of work as provided in resolution adopted by mayor and council of Valdosta on March first, 1922." A number of bids were received from contractors, each bid stating the prices of pavement differently accordingly as one paving material or another should be used. The bids were upon a basis of a certain amount per yard as provided in the specifications. The bid of the Dixon Contracting Company included asphaltic concrete $2.61 per square yard, sidewalks $1.61 per square yard, granite curbing 66 cents per lineal foot. When the bids were opened and examined a resolution was passed, accepting "the lowest bid on asphalt concrete." After the passage of such resolution another resolution was passed, accepting the bid of the Dixon Contracting Company as the lowest and best bid; the resolution providing that the paving should be done with asphaltic concrete. After the passage of such resolution a contract was duly entered into between the city and the Dixon Contracting Company for the pavement of Webster Street from the east side of Patterson Street to the west side of Troupe Street, "to the extent of approximately nineteen hundred (1900) feet in length, with a uniform width of roadway of twenty-three (23) feet with asphaltic concrete laid on a cement base four (4) inches in thickness, with a top thereon of two (2) inches asphaltic concrete, at and for the sum of two and 61/100 ($2.61) dollars, per square yard, and will also lay a cement concrete sidewalk adjacent thereto with a three (3) inch base and one (1) inch top, and with a uniform width of five (5) feet, and will supply and place curbing to the extent of approximately thirty-eight hundred (3800) lineal feet, said curbing to be standard granite 4x18 inches; and will further install concrete gutters laid next to said curbing to the extent of approximately thirty-eight hundred (3800) feet, and supply the labor and material upon the basis of the following schedules: Miscellaneous construction. Granite curbing, per lineal foot, in place, $0.66. Concrete gutters, per lineal foot, in place, $0.40. Laying sidewalk, per square yard, in place, $1.61. All according to certain plans and specifications prepared by the mayor and council of the City of Valdosta, attached hereto and made a part of this agreement." *Held*:

(a) The city was not proceeding illegally, as contended, on the ground that the second resolution failed to describe the material with which it had been determined by the first resolution to pave the street, or upon the ground that the resolution did not state the "manner of construction," but left the manner of construction to be determined by the city engineer and the successful bidder.

(b) Nor was the city proceeding illegally on the ground, as contended, that the advertisement for bids did not definitely state the material to be used, or state the manner of construction.

(c) Nor was the city proceeding illegally on the ground, as contended, that the first and second resolutions passed by the mayor and council under sections 3 and 6 of the act stated that the street should be paved a width of twenty-two feet, whereas the contract provided that the street should be paved a width of twenty-three feet.

(d) Nor was the city proceeding illegally, as contended, on the ground that the bid of the Dixon Contracting Company was not accepted; that the bid was accepted only in so far as it related to material and work of the paving of the street proper, and this did not amount to an acceptance of the bid for paving the sidewalks, installation of granite curbing or concrete gutter, which were included in the plans and specifications made by the engineer; and notwithstanding the bid was not accepted for these, they were included in the contract.

(e) Nor was the city proceeding illegally on the ground, as contended, that the contract provided for the installation of a concrete gutter to the extent of approximately thirty-eight hundred feet at a cost of 40 cents per lineal foot, whereas the antecedent resolution did not provide for the installation or laying of concrete gutters.

(f) Nor was the city proceeding illegally, as contended, on the ground that the engineer's specifications and estimate of cost of granite curbing 4 inches by 18 inches was 60 cents per lineal foot, whereas the contract entered into was 66 cents per lineal foot, the contract price of the whole improvement not exceeding the city engineer's estimated cost thereof.

(g) Nor was the city proceeding illegally, as contended, on the ground that the advertisement for sealed proposals made by the city engineer under the provisions of the act did not state the names of the streets to be paved nor the extent of the paving; nor on the further ground that the notice for sealed proposals published by the city engineer required a deposit of $500 on each bid, payable to the city, to guarantee the execution of the contract, and required bond as a condition to acceptance of a proposal, and required a deposit of $5 for each set of plans and specifications.

12. Section 7 of the act (Acts 1921, p. 1106) provides: " As soon as the said contract is let, and the cost of such improvement, which shall also include all other expenses incurred by the city incident to said improvements in addition to the contract price for the work and materials, is ascertained, the said mayor and council shall by resolution appoint a board of appraisers, consisting of the city engineer of said city, clerk of the city council, and the chairman of the board of tax-assessors, to appraise and apportion the cost and expenses of the same to the several tracts of land abutting on said improvement as hereinbefore provided. Within ten days from the date of the resolution appointing said board, the said board shall file a written report of the appraisal and assessment and apportionment of such expense and cost to the several lots and tracts of land abutting on said street, alley, lane, or avenue or other public places so improved, with the clerk of council of said city, in the manner and on the basis herein provided. When said report shall have been returned and filed, the said mayor and council shall appoint a time for the holding of

a session of council, or shall designate a regular meeting of council for the hearing of any complaints or objections that may be made concerning the said appraisement, appointment, and assessment as to any such lots or tracts of land abutting on said improvement; and notice of such session for the said hearing shall be published by the said clerk of council in at least five consecutive issues of any daily newspaper of general circulation in the City of Valdosta, and said notice shall provide for an inspection of such return by any property owner or other party interested in such return. The time fixed for said hearing shall not be less than five nor more than ten days from the last publication. The said mayor and council at said session shall have power to review and correct said appraisement, apportionment, and assessment, and to hear objections to the same, and to confirm the same either as made by said board or as corrected by said mayor and council. Assessments in conformity to said appraisement and apportionment as confirmed by council shall be payable in ten equal installments, and shall bear interest at the rate of not exceeding seven per cent. per annum until paid, payable in each year at such time as the several installments of the assessments are made payable each year. The said mayor and council shall by ordinance levy assessments in accordance with said appraisement and apportionment as so confirmed against the several tracts of land liable therefor; provided, however, that the rate of interest to be taxed shall not exceed one per cent. (1%) over and above the rate of interest stipulated in the bonds herein provided for." After entering into the contract with the Dixon Contracing Company the mayor and council passed a resolution appointing three appraisers consisting of the city engineer, the clerk of council, and the chairman of the board of tax-assessors of the city, to appraise and apportion the cost and expense of the paving and improvement of Webster Street as provided for in the contract, such appraisement and apportionment to include the contract price of such improvement, and " such other expenses as may have been or may be incidentally incurred in connection with said improvement," and to apportion the cost and expense pro rata per lineal foot frontage of the several tracts of land abutting on such improvements. The assessors made returns as follows: " Assessments on paving on Webster Street from Patteron Street to Troupe Street; price per lineal foot including sidewalks, curb, and roadway paving $10.61 1/2, $5.30 1/2 per foot on each side. S. D. Ravenal 183' @ $5.39 1/2 per lineal foot, $970.82." Immediately following the return as to S. D. Ravenal were the names of all the other owners of property abutting on the street, and statements as to each similar in all respects to those made with respect to S. D. Ravenal, except there was a variance in the number of lineal feet and corresponding variance as to amounts. *Held*, that the mayor and council were not proceeding illegally in the passage of the resolution above mentioned, on the ground, as contended, that the duties imposed on the assessors were insufficiently defined, and because the resolution should have defined with more particularity what " other expenses as may have been or may be incidentally incurred " was intended to include; nor

32

was the city proceeding illegally on the ground, as contended, that the return of assessment did not show the items going to make the total of expenses, and did not describe the property or make an assessment on any particular property.

13. The act of 1921 (Acts 1921, p. 1106), under which the city was proceeding, contemplated payment for the paving solely from assessments against owners of abutting property or the proceeds of bonds issued on the basis of such assessment, except that the city should pay from its treasury for the paving at the intersections of other streets, lanes, alleys, or avenues. The finding by the judge that the city was applying general funds to payment of the contract in excess of its authority was authorized by the evidence. It would have been proper to enjoin unauthorized payments from the city treasury, but the fact of such unauthorized payments did not authorize the judge to enjoin the paving under the contract.

14. In determining whether an improvement does, or does not, benefit property within the assessment district, the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, for grading, paving, and curbing an adjoining street is not void under the due-process clause of our State constitution because the lot is not benefited by the improvement, owing to its present particular use. *Georgia Railroad &c. Co.* v. *Decatur*, 137 *Ga.* 537 (8) (supra); *City of Atlanta* v. *Seaboard Air-Line Railway*, 137 *Ga.* 805 (74 S. E. 268); Louisville & Nashville R. Co. v. Barber &c. Co., 197 U. S., 430 (supra). In *City of Atlanta* v. *Hanlein*, 96 *Ga.* 381 (supra), s. c. 101 *Ga.* 697 (29 S. E. 14), the property against which the paving assessment was made was, in consequence of its peculiar shape and situation, not worth more after than before the improvement, and the cost of the improvement largely exceeded the value of the lot; and the assessment was enjoined because it virtually amounted to a confiscation of the property.

(a) Applying the above principles, certain of the plaintiffs whose property fronted on a different street which was already paved did not made a case which authorized them to enjoin the enforcement of the assessment levied for improving a side street, on the ground that it amounted to a confiscation of their property, and therefore violated the above clause of the State constitution.

15. Other grounds of attack upon the legality of the proceedings by the mayor and council, not specifically ruled upon, are without merit and not of such character as to require elaboration.

            *Judgment reversed. All the Justices concur.*

            No. 3379. September 26, 1923.

Injunction. Before Judge W. E. Thomas. Lowndes superior court. July 22, 1922.

The charter of the City of Valdosta (Acts 1901, p. 670) authorized paving of streets on the basis of assessment of portions of the cost of the improvement against abutting property and

street-railways or other railroads having tracks running through or crossing the streets, the balance of the cost to be paid from other sources. In 1921 another act was passed (Acts 1921, p. 1106) which authorized paving of streets on a basis of assessment of the entire cost of the improvement, except at intersections with other streets, lanes, alleys, and avenues, against abutting property and street-railways and railroads having tracks running through or across the streets. Section 16 of the latter act expressly referred to the existing charter, and declared that such latter act shall not " annul and void " the provisions of the charter relating to paving, but " shall be in addition to " such provisions. On May 20, 1922, the city, acting under the act of 1921, entered into a contract with the Dixon Contracting Company, being a firm of copartners, for the paving of the street and sidewalks on that section of Webster Street that extends from the east side of Patterson Street to the west side of Troupe Street, being a distance of 1900 feet and having a uniform width of 23 feet. On June 24, 1922, J. R. Harris and other named persons, as residents, taxpayers, and owners of property abutting on Webster Street, instituted an action against the city and the Dixon Contracting Company, alleging that the act of 1921 was unconstitutional, that the contract was void, and that the defendants were proceeding illegally; and praying to enjoin (a) paving of the street and sidewalks, (b) levying of assessments on abutting property for cost of paving, (c) issuance of bonds under provisions of the act on the basis of assessments on abutting property, and (d) payment of general funds in the city treasury on supposed obligations arising under the contract. At an interlocutory hearing, without deciding the questions as to constitutionality of the statute or validity of the contract, the judge granted an order that stated: " Among other objections raised, plaintiffs insist that the contract is void, because it necessarily calls for payment to the contractors from funds in the city treasury not subject to be so applied, and produce proof that the city funds are being so applied. . . Under the law, the power of the city to pay or contract to pay for such paving is confined to the funds arising from the sale of bonds not yet issued, or assessments not yet collected. The questions raised are at least serious, and are so doubtful that it seems wise for all concerned to suspend further operation under the contract until a final decision in the case. . .

It is proper, therefore, that injunction issue as prayed; and it is so ordered." The defendants excepted to the judgment.

*George E. Simpson* and *E. K. Wilcox,* for plaintiffs in error.

*A. T. Woodward* and *O. H. Dukes,* contra.