### CITY OF DAWSON *v.* BOLTON *et al.*

1. One who signs a petition as the owner of abutting property which he desires to have paved under the provisions of the act of 1927, amending the charter of the City of Dawson (Acts 1927, p. 1025), can not withdraw his name or consent as a petitioner after the same has been filed with the clerk of the city council of Dawson and action taken thereon. Under the provisions of the foregoing act the written petition of the owners of 51 per cent. of the abutting frontage on the streets sought to be paved is an essential prerequisite to the jurisdiction of the city council, and under the terms of the act the municipal authorities are thereby clothed with discretion to pave such portion of the street as is specified in the petition. The passage of an ordinance embodying the terms and conditions upon which the paving shall be laid, and a hearing preliminary to the passage of this ordinance, are necessary, because the act expressly provides that the council may in its discretion pave the intersections of streets either at the expense of abutting-property owners or at the expense of the city, and in any circumstance where the council may be of the opinion that the proposed paving is not for the best interests of the municipality the council may refuse to grant the prayers of the petitioners.
2. The allegations to the effect that the second advertisement of the notices required by the act of 1927, supra, was not made until the day following that on which the paving ordinance was passed by the city

council, when construed with other allegations of the petition, afforded no ground authorizing a holding that the ordinance was invalid. It appears from the petition that a hearing was had on the date fixed in the advertisement, and it does not appear that the petitioners were not present and did not participate in the protest. The statement that "several persons who signed said original petition afterwards reconsidered and joined in the petition protesting against the final passage of the ordinance" states merely a conclusion of the pleader, since it is not stated how the persons referred to reconsidered or what was said or written in protesting. It not being stated that they objected in writing to the passage of the ordinance, the language used, properly construed, raises an implication that no valid objection was presented.

3. Section 5 of the act of 1927 amending the charter of the City of Dawson is not unconstitutional for any reason assigned.

4. Nor is section 12 of that act unconstitutional because in conflict with article 1, section 1, paragraph 3, of the constitution, in that it denies due process of law, for the reason that the poorer property owners will pay an exorbitant price for their portion of the paving.

5. Sections 5 and 12 of said act are not in conflict with article 7, section 7, paragraph 1, of the constitution, by indirectly creating a public debt against the property of the City of Dawson or a bonded debt upon the part of Terrell County.

6. The court erred in overruling the demurrer to the petition.

No. 6408. APRIL 13, 1928.

Injunction. Before Judge Yeomans. Terrell superior court. December 10, 1927.

E. D. Bolton, J. F. Leverrette, and J. J. Daniel filed a petition against the City of Dawson, asking that the city council of Dawson be restrained from proceeding further with the paving project mentioned in the petition, for a permanent injunction against proceeding further with the proposed paving project or from creating any indebtedness against petitioners or other abutting-property owners on Lee street in Dawson in pursuance of said paving project. It was further prayed that an ordinance providing for the paving of Lee street be declared null and void and set aside, and that sections 5 and 12 of the act of the General Assembly approved August 3, 1927, be declared unconstitutional and void. It is alleged that on October 4, 1927, a petition was filed with the city council of Dawson, asking that Lee street be paved as provided in the charter amendment (Ga. L. 1927, p. 1025), setting out that there were 7570 lineal feet abutting thereon, and the petition was filed by several persons purporting to be the owners of 4152 feet abutting on Lee street; that on October 4, 1927, an ordinance providing for the paving project was offered, and it was ordered by

the city council of Dawson that said ordinance be published in the official organ of Terrell County, and that the afternoon of November 1, 1927, be fixed as a date for any person at interest to have a hearing on said paving project, and that notice of the same be published in the Dawson News, the official gazette of Terrell County; that the proposed ordinance, together with the notice to parties at interest to file their protest, was published in the Dawson News on October 25, 1927, and November 2, 1927. Petitioners aver that a petition signed by several property owners was filed with the city council, protesting against the proposed ordinance and paving project, but their protest was overruled, and the ordinance was passed providing for the paving of Lee street at the expense of the abutting-property owners, and the city council is proposing and planning to go forward with this work; that the ordinance is void for want of the required publication of the notice of the time and place fixed for the hearing, in that this was fixed for November 1 and the second issue of the official gazette was published on November 2, 1927; that the lineal frontage abutting on Lee street is 7570 feet and the original petition asking for the pavement of Lee street purported to be signed by abutting-property owners representing 4152 feet, but several persons who signed the original petition afterwards reconsidered and joined in the petition protesting against the final passage of the ordinance. The names of these parties are stated, and it is alleged that they represent 880 feet of abutting frontage on Lee street, thus leaving only 3272 feet as the remaining number of feet represented by those signing the original petition for paving, which is less than 51 per cent. of the total abutting feet. The petitioners allege that the ordinance and specified sections of the act of the General Assembly upon which it is based are unconstitutional and void upon specified grounds which are hereinafter set forth in the opinion.

A temporary restraining order was issued. The plaintiffs presented and the court allowed an amendment to the original petition, alleging that the list of property owners who filed their protest against the paving project with the city council of Dawson was handed to plaintiffs' counsel by the clerk of the city council. "Plaintiffs now learn that the front footage on Lee street abutting property owned by parties named . . has been accurately

measured," and totals 907.5 feet. "Also Edwards and Weaver signed the original petition asking for Lee street to be paved, and afterwards reconsidered and signed the protest with petitioners and others." Their names should have been on the original list, and petitioners amend by adding their names, and allege that the front footage on Lee street belonging to Edwards and Weaver is 147 feet, which added to the 907.5 feet makes a total of 1054.5 feet represented by property owners who signed the original petition asking that Lee street be paved, but afterwards reconsidered and protested against said paving project. It is alleged that with this 1054.5 feet deducted the net number of feet represented by the original petition would be only 2990.5, which is less than 51 per cent.; that when petitioners went before the city council it was announced by them that several of the property owners who signed the protesting petition had also signed the original petition asking for paving, but had reconsidered and wanted their names withdrawn therefrom.

The defendant demurred to the petition, both generally and specially. The court overruled the demurrers, and after hearing evidence granted an interlocutory injunction restraining the municipality from proceeding further with the proposed paving or the issuance of bonds.

*R. R. Jones,* for plaintiff in error. *W. H. Gurr,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) In our opinion the court erred in overruling the defendants' demurrer, and for that reason the merits of the proceedings upon the hearing were nugatory.

1. We will first consider the question as to whether the withdrawal of certain of the signers of the petition, addressed to the mayor and council, asking that Lee Street be paved, is permissible. It is alleged that a sufficient number of original petitioners for paving have reconsidered and asked to have their names withdrawn from the original petition for paving, which originally embraced more than 51 per cent. by frontage of the owners of the abutting property, to reduce it to less than 51 per cent. It may have been the opinion of the trial court that these original petitioners had the right to protest, as they did, the passage of the ordinance and the issuance of the bonds; and that as there was less than 51 per cent. of the abutting owners, as calculated by frontage, remain-

ing in favor of the paving project, the condition imposed by section 5 of the act of 1927, amending the charter of Dawson (supra), was not complied with. So the first question which arises is whether one who signs a petition asking the municipal authorities of a city to pave a street in which he has an interest as an abutting owner can thereafter reconsider, mend his hold, and ask that the street be not paved. Under the terms of the act the request of 51 per cent., as determined by street frontage, of the owners of property abutting the street to be paved is the initial step in the proceeding and the essential prerequisite to any action upon the part of the city council which clothes it with jurisdiction to proceed at all. Upon the filing of such petition with the clerk of council the municipal authorities must act upon the petition, whether the action be in favor of the prayers of the petition or adverse thereto. The council is not obliged to pass an ordinance providing for the paving which must be followed by an issue of bonds binding the property of those abutting owners who do not pay their share of the cost in cash, for they may consider the circumstances of the 49 per cent. or less of those who do not wish the paving. Cases can be supposed where an expensive paving would amount practically to confiscation of the property of an abutting owner who by reason of poverty might be compelled to sell at a forced sale to the sacrifice of his home. It is to be presumed that a council will consider the hardships imposed upon those in such circumstances, as well as the benefits or luxury of a more numerous class of residents in a particular neighborhood who might desire the paving to be done. But under the charter of Dawson the written petition of the owners of 51 per cent. of the frontage on a street proposed to be paved puts the question up for settlement, and nothing else will. Under the plan proposed, as stated in the petition, the bonds that it may be necessary to issue must be paid by assessment which binds each owner in proportion to his frontage, regardless of its benefits to the individual owner.

But the question here is not as to the judgment of the council in the exercise of its discretion as to whether paving on Lee street will be a public benefit to the City of Dawson. No such complaint is made; the attack upon the ordinance and the act of the General Assembly being placed upon the grounds already stated. The insistence of the protestants, (defendants in error) is that

the council had no jurisdiction to take any action, because, several of the original petitioners having withdrawn, the remaining petitioners are not persons owning 51 per cent. of the frontage. In fact, with the reduction which would be caused by the reconsideration of the original petitioners asking paving, if they had the right to withdraw their names after this petition was filed with the clerk and the council has initiated action by preparing an ordinance and having it advertised, it appears from the petition that less than forty per cent. of the frontage was in favor of paving at the time that the council overruled their protest and passed the ordinance and were proceeding to let contracts for the paving. There is no allegation in the petition that signatures were obtained in any instance by either fraud, accident or mistake. Under the presumption that every man is presumed to know the law, the signers of the original petition must be presumed to have known when they signed in writing, the only instrument which could put the provisions of their charter into operation, the results legally consequent upon their action. We think that upon principle they are estopped to destroy the instrumentality which they themselves assisted in creating. Were the rule otherwise, there would frequently be instances where at considerable trouble and expense the municipal authorities of cities and towns in this State would initiate improvements looking to the paving of streets under petitions that might be well-nigh unanimous, and, when they assembled to finally pass upon the question, would find that so many had withdrawn after the preliminary investigations which should have been made by council as to the feasibility and probable cost of the grading and paving, if there were no other objections, that they find themselves and their acts placed in a ridiculous position. It must be presumed that no owner of city property will sign a petition which he knows will entail upon him his proportionate share of the expenditures and subject his property to a lien therefor without careful consideration, and without taking a view of the probable consequences as affecting himself and his property. He knows that the city may place upon him and his fellow abutters the entire cost, or that the city itself may assume the intersections of streets. He knows that the choice of the pavement to be used, the grade to be accepted, and the contractors to be employed, and final judgment upon the manner in

which the contract is completed, are all within the discretion of the city council. Therefore it is our opinion that he can not withdraw, have his name stricken, and the petition which was ostensibly extended to the council in good faith be destroyed, because, forsooth, he has perhaps learned something since he signed the petition which he did not know at the time of the signing, but a fact in regard to which could have been as well ascertained had he declined to sign until his information was more complete.

In *City of Valdosta* v. *Harris,* 156 *Ga.* 490 (119 S. E. 625, 30 A. L. R. 145), we held that protestants could withdraw their *protests* at any time within the period in which they were authorized to file protests, and thereby prevent them from being counted against the improvements. E converso, it would seem that the withdrawal would have to be before the filing of the petition with the clerk. Under section 3 of the Valdosta charter the mayor and council had authority in the first instance, without any petition from property owners, to pass the ordinance, and protests from a majority of the property owners would defeat the ordinance. In the case at bar, under the terms of the charter of Dawson, the written petition from the property owners is a condition precedent to the passage of the ordinance. When the petition is filed the city council is clothed with all the power given in the act. Unlike the Valdosta charter a subsequent protest does not take away from the city council of Dawson the discretion to use the authority which has been given and which has been acted upon in response to the petition. In fact the language of section 8 provides that the city council may overrule any objections or protests. Obviously in the charter now under consideration the public hearing is called for, and an opportunity given to protest, mainly for the reason that the municipality has the right to charge the abutting owners with the cost of the intersections of streets, or the city may provide part of the paving at its own expense. It does not appear from the petition that the city has not agreed to pay for the intersections of the streets; and construing the pleading most strongly against the pleader, it must be assumed that the city has undertaken this obligation. There are other reasons, already suggested in what has been said, why the city might decline to grant the petition, and why for that reason a hearing should be given to any who might be opposed to the paving project and who had not com-

mitted themselves to the proposition by signing a petition that the streets should be paved. One who signs the petition can not withdraw his name or reconsider after the petition has been filed with the clerk, because the question has then become jurisdictional, and no principle is better settled than that one who invokes action on the part of any governmental agency will not be heard thereafter to deny the authority or jurisdiction of the tribunal.

2. The fact that one of the advertisements of the notice of the time and place of hearing is alleged to have been published on November 2, although the hearing was set for November 1, is of no consequence in this case, because it appears from the petition for injunction that the petitioners were present at the hearing and protested.

3. It seems that the constitutional questions raised have been ruled in previous decisions of this court adversely to the contentions of the defendants in error. The point is raised that section five of the act of 1927, supra, provides that upon petition of the owners of 51 per cent. of the front footage upon the street the city shall have authority, etc., without providing that the petitioners shall be residents of the City of Dawson, or of the State of Georgia, or that they shall be citizens of the United States, or that they shall be of lawful age, or that they shall be natural persons. It is insisted that this includes the delegation of the "power of taxation to strangers, including foreigners and corporations," whereby the municipal authorities are not required to use their judgment and discretion in the premises, and that for that reason section 5 is in conflict with article 1, section 1, paragraph 2, of the constitution, in that it denies impartial and complete protection of the government to the petitioners. Further, that the section conflicts with article 1, section 1, paragraph 3, of the constitution, by depriving petitioners of their property without due process of law, and is in conflict with paragraph 1 of the fourteenth amendment to the constitution of the United States, in denying petitioners the equal protection of the laws, in that they are required to submit to a taxing authority not recognized by the constitution of the State of Georgia. In *Walthour* v. *Atlanta,* 157 *Ga.* 24 (120 S. E. 613), a similar provision to that now under consideration was held not to be illegal, void, or unconstitutional as in conflict with paragraph 1 of the fourteenth amendment to the con-

stitution of the United States, nor in conflict with paragraph 1 of section 7 of article 7 of the constitution of the State of Georgia. See also, upon this subject, *Georgia Ry. & El. Co.* v. *Atlanta,* 144 *Ga.* 722 (87 S. E. 1058), and *City of Valdosta* v. *Harris,* supra. We do not construe section 5 of the act of 1927 as delegating the taxing power to "foreigners" or to any "irresponsible authority not elected by the people." The provision that the city may provide for an issue of bonds for paving purposes, upon the petition of owners of 51 per cent. of the street frontage, does not delegate any authority whatever as to the paving. It is merely the means by which the city is empowered or given jurisdiction to consider the feasibility of paving the street at the expense of the property owners. It is not a case where the taxing power is "delegated," because this court has more than once held that in the issuance of bonds of the nature referred to in the act of 1927 the taxpayers of the city as such are subjected to no liability, for the reason that the city itself assumes none except to supervise the construction of the pavement, with the right to accept or reject the same should it be built by contractors, with the duty of applying all assessments and other funds collected from the owners of the property affected to the specific indebtedness to which the particular property is subjected. If the municipal authorities, being authorized by the petition to consider the paving of a particular street, decide it to be for the best interest that it be paved, there is no denial of any impartial and complete protection, but rather an exercise of the power of classification whereby the named street is segregated from other portions of the municipality and subjected to a special burden because the majority in frontage have asked that they be thus classified. The law presumes and requires that each member of the class shall be subjected to an equal burden, and thus the protection of the law is impartial and complete.

4. Section 12 of the act of 1927 is not unconstitutional as in violation of article 1, section 1, paragraph 3, of the constitution, in that it deprives the property owners of their property without due process of law, "because bonds thus passed on assessments against the poorer property owners will not be worth par value to the contractor, who can add to the price of the paving enough to cover the deficiency, thus requiring the poorer property owners on Lee Street to pay an exorbitant price for their portion of the

paving project." If the same burden is placed upon every citizen affected by the passage of a law, the question of riches or poverty should not be considered. All men should be treated alike. In the present instance, as appears from the act of the General Assembly, the only difference between those who are able to pay cash and thereby relieve themselves from liability on any of the bonds, and those who can pay only in installments, is the 6 per cent. interest upon the bonds. Consequently there is no difference in the exorbitance of the price in the present instance between the richest and the poorest by reason of the fact that the contractor "may add to the price of the paving enough to cover the deficiency," for the man who has cash will have to pay the same "exorbitant price" as will the poorest citizen, and the rate of interest upon the bonds, if one does not wish to pay cash, is less than the legal rate of interest in this State.

5. The contention that the effect of this issue of bonds to pave Lee street in Dawson, in the method prescribed in the act of 1927, is indirectly to increase the public debt of the City of Dawson and of Terrell County to a sum greater than seven per cent. of the taxable values, in violation of article 7, section 7, paragraph 1, of the constitution, is without merit. As provided in the act, this indebtedness binds no property except that of the owners of property abutting upon the proposed paving. The City of Dawson is not liable, and certainly the County of Terrell has no obligation whatever devolving upon it to pay these bonds.

6. From what has been said it follows that the petition did not set forth a cause of action, and that the trial judge erred in overruling the general demurrer.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*

GILBERT, J., dissenting. I can not concur in the reversal of the judgment of the trial court overruling the defendant's demurrer to the petition. I am of the opinion that the signers of the petition filed by the owners of abutting property had the right under the law to withdraw their names at any time before the council had acted upon the petition, authorizing the improvement in question. The proceeding was not technically a judicial one. It might be called quasi-judicial. The principle involved may be likened, however, to the filing of a petition in court. The filing of such peti-

tion is a recognition by the petitioner of the jurisdiction of the court, but the filer undoubtedly may withdraw his petition at any time as a matter of right before there has been some action by the court, such as the rendition of final judgment, return of a verdict, or filing of a cross-petition praying for affirmative relief against the original petitioner. In the present case the petitioners allege that a sufficient number of the original petitioners withdrew and joined the protestants before final action by the council; that the only thing done by the council was to *offer for adoption* at a future meeting an ordinance authorizing the improvement and order the publication required by law, giving notice to property owners of the time and place for making objections. In the majority opinion it is stated that the city published notice and were "proceeding to let contracts for the paving." The words quoted are too indefinite to authorize the conclusion that any action had been taken by council. Moreover, the city was not authorized to proceed with letting contracts until the ordinance became operative by final action. Final action had not been taken until after the signers had withdrawn their names.

The paving was sought to be authorized under Ga. Laws 1927, p. 1025. In section 4 of that act it is provided that the city council may pave streets without a petition from property owners. In section 5 it is provided that where property owners desire the paving done under what is called the "Oklahoma plan," owners of 51 per cent. of the lineal front footage of property abutting on the street must file a petition with the mayor and council. The petition in this case alleges that a petition was filed October 4, 1927; that on the same date an ordinance providing for the paving was *offered,* and it was ordered by the city council that the ordinance be published as required under the above act, § 8, and the council fixed November 1, 1927, as a date on which any person at interest might have a hearing of his objection. The act requires notice of the time and place of the hearing to be published in "at least two issues" in the official newspaper of the county. Notice was published in the official organ, *The Dawson News,* on the afternoons of October 25 and November 2, the latter date being the day after that set for the hearing. One allegation is that the publication did not amount to two publications as required, and was not a compliance with section 8 of said act, as one of the pub-

lications came after the date set for the hearing. The petition alleges that the second publication appeared after the date set for the hearing. The failure to comply with the statute in this regard, if true, would authorize the grant of an injunction. Under the evidence there seems to be a question of the correctness of this allegation, but the majority ruling is based on the petition and not on the evidence, the judgment of the lower court being reversed on the ground that the court erred in overruling the defendant's demurrer to the petition. In this State there has been no direct ruling upon the precise question as to the right of petitioners to withdraw their names after the petition has been filed. The case nearest to such a ruling deals with the right of protestants to withdraw their names. *City of Valdosta* v. *Harris*, 156 *Ga.* 490 (supra). In other States the question seems to be very well settled, practically without conflict. Among those authorities on the question of withdrawal of consent, the following are pertinent:

Indiana (1873) : "Where a petition asking a city to make a donation in aid of the construction of a railroad has been presented to the common council and referred to a committee of the council, persons who signed the petition may, by a remonstrance, withdraw their names from the petition while the same is in the hands of the committee; and if, after such withdrawal, there is not a sufficient number of petitioners asking the donation, the council can not make the same." Noble *v.* Vincennes, 42 Ind. 125.

Alabama (1876) : "Until the city authorities act upon the application of real-estate owners to have a street improved at the expense of adjacent proprietors, any one of the applicants may revoke his action; and if this reduce the number to less than that required by the charter, the power of the municipal authorities to make such improvement is thereby taken away; if, before such revocation, the city has entered into a contract to have the work done, it is too late to retract." Irwin *v.* Mobile, 57 Ala. 6 (4).

New Jersey (1895) : "If council, at the passage of such an ordinance, had before it a petition and consent signed by the owners of the requisite amount of taxable property, and communications from four of the signers, retracting such consent, and desiring their names to be removed from the petition, no power existed to pass the ordinance if the taxable value of the retracting signers, when deducted from the taxable value of the property shown by

the petition, reduced the latter below the amount required by the act." Biddle v. Riverton, 58 N. J. Law 289 (33 Atl. 279). In the Biddle case the withdrawal was presented five days before the final passage, and in the case at bar it was presented at the final meeting, and, so the record would indicate, before the vote. The retraction in the case at bar was by way of the signing of a second petition against the improvement, by persons who had signed a first in favor of it.

New Jersey (1902): "With respect to the votes necessary to confer jurisdiction upon the common council, the application must speak as of the time when the common council assumes jurisdiction. Prior to that time, names may be added or withdrawn. After that time the application is not subject to such change." Bachman v. Phillipsburg, 68 N. J. L. 552 (53 Atl. 620). On the rule that there can be no withdrawal after jurisdiction has vested, and that revocation is not operative if notice is not given before passage of the ordinance, the Bachman case cites Hutchinson v. Belmar, 61 N. J. L. 443 (39 Atl. 643), and Currie v. Atlantic City, 66 N. J. L. 140 (48 Atl. 615), which hold these propositions.

New York (1873): "It was not necessary that the statute should give the right to withdraw. This right the law gives petitioners, unless prohibited by the statute. . . Besides, signing the petition is only a representation that he is then in favor of bonding. It is not a promise that he will remain so, or that he will not exercise his right to withdraw in case he changes his mind upon further information. . . The allowance of the right to withdraw will tend to prevent fraud in procuring signatures, as signatures so procured would be almost certain to become useless by the exercise of the right by the person so induced to sign." People v. Sawyer, 52 N. Y. 296, 301, 302.

Arkansas (1906): "Kirby's Dig. § 5667, in relation to municipal improvements and the creation of districts therefor, provides for a petition to the city council by a majority in value of the owners of real estate and the appointment of a board of improvements to take charge of the construction of the improvement. Held, that, after a board of improvements had been appointed, signers of the petition were not entitled to withdraw their names." Lenon v. Brodie, 81 Ark. 208, 98 S. W. 979. The statute upon which the proceeding in that case was based, however, was not like

the provisions of the Dawson charter before us. The estoppel against the signers is based on the statutory provision that after the required number of property owners have petitioned for the improvement the council shall appoint three real-estate owners of the district as a board of improvements, that they shall take an oath of office and elect a chairman, that thereupon they become organized for the transaction of the business imposed by law, "and the district is completely organized for the purpose it was created." Obviously, after this, it was too late for petitioners to withdraw. As stated by the court, "the petition had answered its purpose and was no longer subject to the action of the city council."

Pennsylvania (1909): "A signer of a petition for street paving may withdraw his signature by notice to the proper officers before action has been taken, but not after the council has passed the authorizing ordinance." Newton v. Emporium, 225 Pa. 17 (73 Atl. 984); Dutten v. Hanover, 42 Ohio St. 215 (3).

Mr. Justice Atkinson concurs in this dissent.