## 25981. COLLIER *v.* CITY OF BARNESVILLE.

DECIDED MARCH 4, 1937.

*Jones, Johnston, Russell & Sparks,* for plaintiff in error.

*Little, Powell, Reid & Goldstein, James K. Rankin, Claude Christopher, Morgan S. Cantey,* contra.

MACINTYRE, J. On November 13, 1934, a paving-assessment fi. fa. was issued by the City of Barnesville against J. C. Collier, and was duly levied. An affidavit of illegality was filed, alleging that, under the charter provisions of said city, paving assessments might be levied against abutting-property owners for the cost thereof, on the basis of ten per cent. a year for ten years; that this assessment might be levied whenever a resolution was passed by the mayor and council in which they stated that it was deemed necessary, and such resolution was published in accordance with the requirements laid down in the charter, or whenever the parties who owned a majority of the lineal-foot frontage on the street desired to be paved, should petition the mayor and council for such improvement; and that in 1928, acting by reason of a petition filed by a majority of such abutting property owners on Thomaston Street, the mayor and council contracted for, and had paved, the street in question. J. C. Collier, who filed this affidavit of illegality, signed such petition and was one of the property owners, and paid the assessments levied against him from that date until the time of the issuance of this execution. The affidavit alleged that certain named persons who were the signers of the petition presented to the mayor and council, and by reason of which the paving contract was issued and completed, were not the

*legal owners* of the abutting property which they specified in the petition, and for that reason the number of feet alleged to have been owned by these signers, to wit, 981 lineal feet, should be deducted from the number of feet necessary, and that there would not then be left a majority of the abutting owners necessary to authorize the issuance of any assessment for paving done. The exhibits attached to the illegality show that a petition alleging, "We, the undersigned property owners of realty property fronting on Thomaston Street," etc., asked that said street be immediately paved. Opposite each signature was the amount of lineal feet represented as owned by such signer. The mayor and council passed a resolution stating that after such petition was presented to them, "and whereas after canvassing the said petition it was found to be in proper form and properly executed and signed by those parties who own a majority of the lineal-feet frontage of real property fronting on said Thomaston Street," said paving was authorized. Under the authority given, the mayor and council were in effect a court to pass on such questions as might be involved in the petition. After canvassing it, the facts set forth therein were found to be true, and the resolution authorizing the paving contract in pursuance thereof was, in effect, a judgment which was conclusive on all matters which were raised therein. The ownership of the land abutting such street was a necessary fact to be shown in the petition, and it was the duty of the mayor and council to determine this, if it were made an issue. A person who is himself a signer of such petition, and who has received the benefits thereunder, may not thereafter resist payment therefor on the ground that some of the signers were not the holders of the legal title to the property. This issue, if raised at all, could be raised only by the legal owners of the property affected.

In the present case, in order to give the mayor and council authority or jurisdiction to act, it may have been necessary that they be presented with a petition requesting such action by a majority of the abutting landowners. A holder of the legal title to such property, except where fraud is alleged and shown, may not, after an acceptance of the benefits of such paving and a payment of certain installments due thereon, now claim that those who purported to sign as owners were not in fact owners, and signed as unauthorized agents. The essential facts necessary to show the

power, or the jurisdiction, as is claimed by counsel for the plaintiff in error, of the mayor and council, were shown by the affidavit of illegality itself, which set forth the petition under which they purported to act. Their resolution approving such petition was a judgment that the facts alleged were true. If true, jurisdiction was had of the subject-matter. It could not be arrested, for it was regular upon its face. Under the allegations, the plaintiff in error can not go behind the judgment rendered, and show a different or contrary state of facts, and thus show that the judgment was wrong. No fraud is alleged, and he has not acted promptly in attacking the alleged illegal contract. The court did not err in dismissing the illegality.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. In *City of Dawson* v. *Bolton,* 166 *Ga.* 232 (143 S. E. 119), it was held that "the written petition of the owners of 51 per cent. of the abutting frontage on the streets sought to be paved is an essential prerequisite to the jurisdiction of the city council." And in *Bower* v. *Bainbridge,* 168 *Ga.* 616 (148 S. E. 517), it was ruled that while owners of abutting property were estopped from attacking the assessments made against them where the city had jurisdiction to make the contract for street improvements, they were not so estopped where the city was without such jurisdiction. In the instant case the amended affidavit of illegality, filed by an abutting-property owner, alleged facts which, if true, showed that the City of Barnesville, under the provisions of the act which the city claimed conferred on it authority to proceed with the paving, was without jurisdiction in the premises, and the property owner was not estopped from asserting the lack of jurisdiction. I think the court erred in dismissing the illegality.